## B & B REFRIGERATION AND AIR CONDITIONING SERVICE COMPANY, INC. *v.* STANDER ET UX.

[No. 86, September Term, 1971.]

*Decided December 8, 1971.*

578

The cause was argued before HAMMOND, C. J., and BARNES, MCWILLIAMS, SINGLEY, SMITH and DIGGES, JJ.

*John T. Bell,* with whom were *Charles W. Bell, Frank S. Cornelius* and *Bell & Bell* on the brief, for appellant.

*Norman H. Heller* for appellees.

MCWILLIAMS, J., delivered the opinion of the Court.

Appellant (B & B) came here to persuade us to set at naught a judgment of the Circuit Court for Montgomery County against it in the sum of $2,055, $55 of which the jury labeled "compensatory damages"; the balance they characterized as "punitive damages." The facts and circumstances giving rise to the litigation although simple enough are a little unusual.

In 1963 the appellees (Stander) bought a brand new fully air conditioned house in Silver Spring. In August 1970 the "air conditioning unit" stopped running and, as a result, the house became "very hot." It seems the unit had given yeoman service during the seven year period despite the fact it had never been serviced. Indeed Stander conceded he "[n]ever did a thing to it." Early on 3 August he telephoned B & B, stated his problem and asked for a mechanic to come and set it right.

Gaines Lloyd, B & B's mechanic, turned up around midafternoon. He said his inspection of the unit led him to suspect that the "running capacitor" might be defective so he disconnected it, tested it, and found that it was indeed so. Since Stander was not at home and could not be reached Lloyd left with Stander's son David an invoice stating he had checked the unit, that he had dis-

covered the cause of the trouble, and that the capacitor would have to be replaced. The indicated charge for the call (and one-half hour of labor) was $18. The invoice also disclosed an estimate of $35 for the capacitor plus the cost of the labor. It was signed by David.

Lloyd returned several hours later, having been given "the okay to do the work." He said he removed the defective capacitor and replaced it with one that was serviceable. Another invoice was made out showing a charge of $35 for the capacitor and $38 for labor (including the $18 shown on the earlier invoice). Above Stander's signature there is printed on the invoice, "I hereby accept above performed service, and charges, as being satisfactory and acknowledge that equipment has been left in good condition." On the reverse side is a guaranty that "the parts installed by * * * [B & B] will perform satisfactorily under conditions of normal usage for a period of ninety days." Lloyd said that when he left Stander's house the unit "was running and cooling." Stander gave Lloyd his check for $73 ($35 + $38).

On the next day (Tuesday) when Stander returned home from work the unit was not running. Before leaving for work on Wednesday morning he telephoned B & B "and told them to send somebody * * * to take care of it." Lloyd arrived late that afternoon and after inspecting the unit he left with David still another invoice stating that the "condenser fan motor * * * [was] froze up." A labor charge of $18 was indicated and there also appeared the notation that the motor was "not under [the B & B] guaranty." Stander says he told Lloyd not to replace the motor. He bought one from another company and installed it himself. For the remainder of the season the unit "was functioning satisfactorily."

Stander testified that in the course of replacing the fan motor he noticed "a little smuck of yellow paint that was on the outside of the" capacitor. This led him to suspect that Lloyd had not replaced it but had merely put back the old one. He complained to B & B and when Thomas, its vice president and general manager, dis-

puted his contention Stander stopped payment on his $73 check.

Thomas said Lloyd had brought back to the shop the capacitor he removed from Stander's unit and that he handed it to the man in charge of the stock room. Thomas was "with the service manager" when it was checked and "it was bad." Ordinarily, he said, they throw out defective capacitors. He saved this one because, after Stander's call, he thought there might be trouble.

Stander did not dawdle. He filed suit against B & B on 10 September. There are two counts in his declaration. In "Count One" he alleged that "upon learning that * * * [Lloyd] had not changed the capacitor * * * [he] ordered his bank to stop the check he had issued in payment, at a cost * * * [to him] of $2.00." He alleged also that Lloyd "fraudulently and deceitfully claimed to have replaced but in fact did not replace" the capacitor. "Count One" concludes with a demand for "judgment in the sum of $2.00" and the return of the $73 check upon payment by Stander "of a reasonable charge for labor actually performed by" B & B. In "Count Two," after incorporating by reference all of the allegations in "Count One," he further alleged that he

"relied on the honesty of * * * [Lloyd] to perform the work for which * * * [he] hired * * * [B & B] and that * * * [Lloyd] deceitfully violated the trust and confidence that * * * [he] had in * * * [B & B] by fraudulently removing the capacitor which was in * * * [the] air conditioning unit, pretending to replace the capacitor with a new one and in fact putting the same capacitor that he had removed back into the unit.

"In spite of the fact that there was nothing wrong with the capacitor that was in the air conditioning unit, * * * [Lloyd] not only claimed to have changed the capacitor and charged * * * [him] $35.00 for a new capacitor,

which * * * [Stander] say[s] was not needed, but did not supply a new capacitor, all constituting an unlawful practice in violation of Article 83, Section 21 of the Maryland Code." [1]

"Count Two" concludes with a demand for $15,000 punitive damages.

B & B responded with the general issue plea and a counterclaim for $91 to which Stander pleaded the general issue and a special plea in which he admitted being indebted to B & B "for such reasonable charge for labor actually performed" by B & B.

The case came on for trial before Miller, J., and a jury on 17 February 1971. We have read and re-read the testimony of Stander and his son David but we did not see anything which could be said to support a finding that Stander has sustained any loss or damage. He has not paid out any money. During the argument before us counsel for Stander agreed no damage had been shown and that there was not even any proof in respect of the two dollar bank charge claimed in the declaration. Even if we assume, as Stander contends, that Lloyd put back the same capacitor he took out, Stander still has it and it continues to work satisfactorily. Nor can he say anything B & B did or did not do in any way deprived him of the use of his unit. Lloyd was able to start it up again and there is no doubt it performed satisfactorily until

---

1. "The act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, or the concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise, or service whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice; provided, however, that nothing herein contained shall apply to the owner or publisher of newspapers, magazines, publications or printed matter wherein such advertisement appears, or to the owner or operator of a radio or television station which disseminates such advertisement when the owner, publisher or operator has no knowledge of the intent, design or purpose of the advertiser; and provided, further, that nothing herein contained shall apply to any advertisement which is subject to and complies with the rules and regulations of, and the statutes administered by the Federal Trade Commission."

the motor "froze up." Lloyd told him that it needed a new fan motor and so it did. Stander himself installed the new motor and he agreed that for the remainder of the season the unit worked well. Stander's admission that he owes B & B the "reasonable charge for labor actually performed" suggests he was entirely satisfied with Lloyd's services and that his complaint stems solely from his belief that the capacitor was not replaced.

Upon what theory or upon what evidence the jury arrived at its award of "compensatory damages" in the amount of $55 we are unable to say. Thomas testified B & B's charges were "fair and reasonable." He said they were "competitive with most anyone in the trade" and that B & B "always check[ed] around to find out what everybody is charging" and that it tried to stay "compatible." Stander made no effort to contradict or controvert this testimony and, as we have pointed out, he admits his obligation to pay a reasonable charge for labor actually performed. It would seem to follow therefore that he is indebted to B & B in the amount, at least, of $56 ($91 less the $35 charge for the capacitor). Even if we were to assume that the jury, by prestidigitation perhaps, was able to transmute a virtually admitted debt of $56 into a pecuniary loss of $55 we could not overlook the fact that by their verdict in favor of Stander on B & B's counterclaim they have found that Stander owes B & B nothing. In short, since the jury nullified its "compensatory damages" verdict the ensuing judgment must be expunged. It is settled that, in cases like the case at bar, punitive damages are not recoverable in the absence of proof of actual loss. *Kneas v. Hecht Company*, 257 Md. 121, 125 (1970) ; *Delisi v. Garnett*, 257 Md. 4, 9 (1970), and the cases there cited. This, of course, leaves the punitive damages judgment without the requisite foundation so it too must fall.

There remains for our consideration only the matter of the counterclaim. Since we think it is clear that B & B restricted its appeal to the judgments for compensa-

tory and punitive damages, we shall not disturb Stander's judgment against B & B for costs.

> *Judgments for damages reversed.*
> *Judgment for costs in the counterclaim affirmed.*
> *Remainder of the costs below and the costs in this Court to be paid by appellees.*