# WOLF ET UX. *v.* LEVITT & SONS, INC.

[No. 126, September Term, 1972.]

*Decided January 10, 1973.*

624

The cause was argued before BARNES, MCWILLIAMS, SINGLEY, SMITH, DIGGES and LEVINE, JJ.

*John T. Bell,* with whom were *Charles W. Bell, Frank S. Cornelius, Bell & Bell* and *M. Albert Figinski* on the brief, for appellants.

*Leo Wm. Dunn, Jr.,* with whom were *Nylen & Gilmore* on the brief, for appellee.

BARNES, J., delivered the opinion of the Court.

The appellants, Fred F. Wolf and Shirley H. Wolf, his wife, on April 5, 1971, filed in the Circuit Court for Prince George's County a two count declaration sounding in trespass *quare clausum fregit* against the appellee, Levitt & Sons, Inc. The first count alleged a willful and wanton trespass by Levitt's agents on the land of the Wolfs, being Section 1, Block 2, Lot 1A of a subdivision known as Montpelier, Prince George's County, where the Wolfs have their home, for the purpose of gaining information for use in a pending law action, which caused Mrs. Wolf to become emotionally upset. The damages claimed were $100,000.00. The second count incorporated the facts alleged in the first count and alleged that Mr. Wolf, because of the willful trespass of Levitt's agents, had to pay for medical services for his wife and lost her services, affection and companionship. The damages claimed in the second count were $50,000.00.

The case was removed on September 21, 1971, to the Circuit Court for Calvert County where it came on for trial before Bowen, C. J. and a jury on March 7, 1972. At the conclusion of all the evidence, Judge Bowen granted Levitt's motion for a directed verdict as to count one and denied the Wolfs' request for instruction on punitive damages. The jury returned a verdict for the Wolfs and assessed "nominal damages of one cent." Judgment for this amount and costs was duly entered and a timely appeal was taken by the Wolfs from that judgment.

The Wolfs raise three questions before us, *i.e.*, whether the trial court erred in (1) refusing to instruct the jury on punitive damages, (2) in granting Levitt's motion for a directed verdict as to count one of the declaration, and (3) in sustaining Levitt's objection to a question put to Mr. Wolf by his counsel in regard to the amounts he had paid for the medical treatment of Mrs. Wolf.

The testimony taken at the trial is not basically in dispute. The Wolfs have lived in their home in the Montpelier subdivision since December of 1966. They own their home, having purchased it from Levitt. They have three children. They filed an action at law against Levitt for damages alleged to result from certain breaches of promises made by Levitt to them in regard to the purchased property, which was coming on for trial on Wednesday, February 10, 1971. In the morning of the day before the trial date of that law action—Tuesday, February 9—Ray Weems, Jack Callahan and Andrew Paul Grabus, III, employees of Levitt, parked their automobile in front of the Wolf home, walked up the driveway and entered the rear yard of the Wolf property. Mr. Grabus, a House Line Superintendent and Service Manager for Levitt, testified on cross-examination that the "reason and intent for going [on the Wolf property] was to see what the problem was that the Wolfs stated." He stated further that he knew litigation was pending between the Wolfs and Levitt and he knew on February 9 that he was to testify in that case the following day. While on

the Wolf property, the three men inspected the back yard and the deep well for approximately five minutes. They had "completed what they came for" when Mrs. Wolf walked into her kitchen and saw the three men standing by the plate glass doors. She testified that she "was shocked"; that she "heard the word, Levitt, one man took a couple steps towards me and there was conversation between the three of them as to whether or not they would leave"; and that she asked them to leave and they did. No permission had been given the three men to come on the premises.

Mrs. Wolf further testified that she "went back into the house after they left and . . . fell completely apart." Mr. Wolf testified that when he returned home from work, he found his wife "in such a state of extreme fright that it bordered on hysteria." Later, Mrs. Wolf consulted two physicians and Mr. Wolf paid their bills. Two of the three Levitt men appeared and testified as witnesses for Levitt at the trial on February 10, 1971.

### (1)

Our predecessors in *Heinze v. Murphy*, 180 Md. 423, 430, 24 A. 2d 917, 921 (1942) indicated that in order to be entitled to an award of punitive damages "there must be an element of fraud, or malice, or evil intent, or oppression entering into and forming part of the wrongful act. It is in such cases as these that exemplary or punitive damages are awarded as a punishment for the evil motive or intent with which the act is done, and as an example, or warning to others." We cited *Heinze* with approval in *Drug Fair v. Smith*, 263 Md. 341, 352, 283 A. 2d 392, 398 (1971) in which Judge Digges, for the Court, stated:

"Actual or express malice may be characterized as the performance of an unlawful act, intentionally or wantonly, without legal justification or excuse but with an evil or rancorous motive influenced by hate; the purpose being to delib-

erately and wilfully injure the plaintiff." [citing several prior Maryland cases]

*See also Shell Oil Co. v. Parker,* 265 Md. 631, 637, 291 A. 2d 64, 68 (1972) in which we reviewed the legal history of punitive damages and also cited *Heinze v. Murphy* with approval.

There are several reasons why the action of the trial court in declining to give an instruction on punitive damages was correct.

First of all, there was no evidence in the case indicating any malice or oppression on the part of Levitt's agents in committing the trespass upon the Wolf land. There was no physical injury to the freehold, no loud or abusive words or threatening words or actions, and there was no injury to any personal property on the land. Indeed, the three agents behaved themselves quite well and when asked to leave, they left. There is no suggestion that they knew Mr. or Mrs. Wolf prior to their entry upon the land or had any reason or intent to injure them in any way. They were seeking to obtain firsthand information in regard to the condition of the Wolf premises so that they could testify more intelligently in court the following morning on behalf of their employer, Levitt. They were seeking to advance the interests of their employer, and not to injure or harass Mr. or Mrs. Wolf. As we indicated in *Associates Discount v. Hillary,* 262 Md. 570, 582, 278 A. 2d 592, 598 (1971)—a case involving trespass to land—when the trespasser is seeking to advance a business purpose of his own, without intent to injure the landowner, and where there is no wanton or reckless disregard of the property rights of the landowner, punitive damages should not be awarded against the trespasser. In *Associates Discount,* we cited with approval and followed our prior decisions in *Damazo v. Wahby,* 259 Md. 627, 270 A. 2d 814 (1970) and *B. & O. R.R. Co. v. Boyd,* 63 Md. 325 (1885)—involving an action of trespass q.c.f.—indicating that in the absence of actual malice there can be no award of punitive damages.

The Wolfs seek to supply the required proof of actual malice by urging that a "blatant disregard" by Levitt of Maryland Rule 419 b, which permits a party to obtain an order of court to enter land of another party for inspection and otherwise investigate the premises, is evidence of actual malice sufficient to support an award of punitive damages. There are at least two answers to this contention: (1) the record is silent in regard to whether Levitt did or did not obtain an order under Rule 419 b—there being no testimony in regard to the matter and the docket entries in the law action tried on February 10, 1971, not having been introduced into evidence in the present case, and (2) no sanction of punitive damages appears in the Maryland Rules for entry upon land by a party without having obtained an order under Rule 419 b. The failure to obtain such an order by Levitt—if it did fail to obtain one—only means that the entry without such an order upon the Wolf land was a trespass with the ordinary and established sanctions for such conduct. It is not evidence of "actual malice." In the instant case, the trespass was a technical one as the jury found.

Secondly, the trial court's instructions in regard to damages explained to the jury the difference between a technical trespass to land which would entitle the Wolfs to a verdict of nominal damages of one cent and an award of compensatory damages if the jury found any evidence justifying an award of compensatory damages. Judge Bowen instructed the jury in this regard as follows:

"Now, you will recall for yourself what the evidence is about the damage to the property, but as the Court recalls the evidence there is no evidence of damage to the property other than the fact these men walked on it. If you find that that is the case then you are instructed that you must none the less bring in a verdict in favor of the Plaintiff, but in this case you will bring in what we call nominal damages. Since no actual harm to the property was

shown. Now nominal damages are one cent and costs. So if you cannot find any evidence of actual damage to the property then your verdict is for one cent for the Plaintiff, but for one cent and costs.

"Now to the extent you find the evidence supports any greater figure of actual monetary loss for damage to the property as a result of their walking up the driveway and around into the back yard then you may bring in such large a figure as you feel is adequately supported by the evidence and is fair and reasonable. You have heard it all and the Court leaves it up to your judgment in the matter.

"You must bring in a verdict for the Plaintiff, you must bring in at least nominal damages. For more than that you must find support for an actual damage to the land itself."

There were no exceptions filed to this charge by the Wolfs, their exception being confined to the trial court's refusal to grant an instruction on punitive damages.

The jury returned its verdict for the plaintiffs and assessed the damages as "nominal damages of one cent."

The present case in this regard is quite similar to the case of *Shell Oil Co. v. Parker, supra,* in which we held that under the instructions in *Shell Oil* in regard to nominal damages for the technical violation of a legal right and a subsequent verdict of the jury for such nominal damages, there was no finding of *nominal compensatory* damages upon which an award of punitive damages could be predicated. In the instant case it is apparent that in accordance with the trial court's instructions—to which no exception was made in this regard—the jury found no compensatory damages, nominal or otherwise, and hence there was no verdict upon which an award of punitive damages could have been based, even if Judge

Bowen had granted an instruction in regard to punitive damages. In short, in the circumstances of the present case, the Wolfs suffered no prejudice by the refusal of the punitive damage instruction.

Thirdly, it could well be argued that the instruction should not have been granted inasmuch as no punitive damages, as such, were claimed in the declaration. This point, however, was not raised below or considered by the trial court and we will not decide it here. Maryland Rule 885.

## (2)

The Wolfs contend that the trial court erred in granting Levitt's motion for a directed verdict upon count two of the declaration.

In *Zeigler v. F Street Corp.*, 248 Md. 223, 226, 235 A. 2d 703, 705 (1967)—involving a claim for damages allegedly resulting from mental distress caused by a trespass to the plaintiff's land—we stated:

> "[O]rdinarily there can be no recovery for mental suffering, resulting from damage done to property. *State, Use of Aronoff et al. v. Baltimore Transit Co., supra.* As was stated in 25 C.J.S., *Damages* 68, page 826, '* * * it is generally held that under ordinary circumstances there can be no recovery for mental anguish suffered by plaintiff in connection with an injury to his property. Where, however, the act occasioning the injury to the property is inspired by fraud, malice, or like motives, mental suffering is a proper element of damage. It has been held that an injury to property alone will not support a recovery for fright occasioned by such injury.' "

As we have observed in our consideration of the first question, there is no evidence that the trespass to the

Wolf land was "inspired by fraud, malice or like motives" and indeed the jury found that it was a technical trespass only entitling the Wolfs to nominal damages for that technical violation of their rights in the land. In sum, there was no evidence to bring the present case within the exception stated by us in *Zeigler*.

## (3)

Finally, the Wolfs urge that the trial court erred in sustaining the objection to a question addressed to Mr. Wolf in regard to the amount he paid Dr. Snow for Mrs. Wolf's medical treatment. In our opinion, there was no error in this ruling inasmuch as a proper foundation had not been laid for the answer in establishing the necessity for the service and the reasonableness of the charge.

As Judge McWilliams, for the Court, in *Metropolitan Auto Sales v. Koneski*, 252 Md. 145, 154, 249 A. 2d 141, 146 (1969) aptly stated:

> "In *Kujawa v. Baltimore Transit Co.*, 224 Md. 195, 208, 167 A. 2d 96 (1961) we said:
>
>> " 'The medical bills, absent a showing of reasonableness, were properly excluded. Evidence of the amount or payment of medical bills does not establish the reasonable value of the services for which the bills were rendered or justify recovery therefor. * * *.'
>
> "To the same effect *see Washington, Baltimore & Annapolis R.R. Co. v. Kimmey*, 141 Md. 243, 118 A. 648 (1922)."

*Judgment affirmed, the appellants to pay the costs.*