MONTGOMERY WARD & COMPANY, INC. ET AL. *v.* KEULEMANS

[No. 230, September Term, 1974.]

*Decided July 7, 1975.*

The cause was argued before MURPHY, C. J., and SINGLEY, SMITH, DIGGES, LEVINE, ELDRIDGE and O'DONNELL, JJ.

*Kevin J. McCarthy,* with whom were *Sasscer, Clagett, Channing & Bucher* on the brief, for appellants.

*James J. Casey* for appellee.

SINGLEY, J., delivered the opinion of the Court.

After the Circuit Court for St. Mary's County had entered judgments for $1,350.00 compensatory damages for false arrest and for $25,000.00 punitive damages for malicious prosecution on jury verdicts in favor of Alphonse Keulemans against Carleton R. Johnson, Allen Gilgenberg and Montgomery Ward & Company, Inc. (Ward), sometimes hereafter referred to collectively as "the defendants," the defendants appealed to the Court of Special Appeals, which affirmed the judgments in *Montgomery Ward & Co. v. Keulemans,* 23 Md. App. 81, 326 A. 2d 45 (1974). We granted certiorari in order that we might review the decision.

The facts which gave rise to the litigation can be briefly

told. Over an eight year period, Keulemans had been employed by Ward as receiving stock manager and as shipping manager at its store in the Capital Plaza Shopping Center, Hyattsville, Maryland. The position was one involving some responsibility. In June of 1971, Keulemans was receiving a salary of $200.00 a week and was supervisor of a department in which there were 26 employees.

The employees received the merchandise delivered to the store; took care of freight bills, and routed incoming merchandise to the marking room, where price tags were affixed. The department was also responsible for shipping merchandise which was to be delivered. Keulemans also spent about an hour each day in the retail store, examining merchandise on display to verify that it had been properly priced and coded. On occasion, it would be necessary for Keulemans to return to the marking room merchandise which had been improperly priced or coded.

At about 4 o'clock on the afternoon of 22 June 1971, Johnson, a member of Ward's security force for about a year, who was acquainted with Keulemans and was familiar with his duties, saw Keulemans standing in front of a case where clip-on sunglasses were displayed. According to Johnson, Keulemans had stooped down to take sunglasses from the rack, and had three pairs in his hand when he was paged on the intercommunicating system. In order to respond to the call, Keulemans returned two pairs of sunglasses to the rack; put the third pair in his pocket, and went to the telephone.

Keulemans' version of the incident was that he had previously bought at People's Drug Store in the same shopping center a pair of clip-on sunglasses which did not fit properly. He knew that two racks of Polaroid glasses had come through the receiving department, and decided to go into the store to look at them on his next break. When Mr. Johnson saw him, Keulemans had in his hands his own pair, and either one pair or two pairs of glasses which he had removed from the rack for purposes of comparison. When he heard the page call, he returned the glasses which he had

taken from the rack, went to the telephone, and put his own pair in his pocket.

Keulemans left the store about 6:30, and was in his car on the parking lot when Johnson asked Keulemans to return to the security office. There, Johnson accused Keulemans of having stolen the sunglasses which he had put in his pocket. Keulemans explained that he had purchased the glasses at People's Drug Store. Johnson placed Keulemans under arrest. Keulemans telephoned Gilgenberg, Johnson's superior, who replied that he had "to go by what Mr. Johnson told me." Keulemans then telephoned his lawyer, whose office was nearby.

After Keulemans' arrest, but before Keulemans surrendered himself to the police, Johnson and Keulemans' attorney went to People's Drug Store where Keulemans had said he had bought the glasses and talked to the manager. The manager told them that the store "didn't carry these glasses any more." [1]

Keulemans surrendered to the Prince George's County police, where he was charged with shoplifting. At his trial, two of Ward's employees testified that Keulemans was wearing sunglasses when he arrived for work on the day of his arrest. Mrs. Helen Temple, who had been employed at People's Drug Store in Capital Plaza since 1963, testified that she had sold a pair of clip-on sunglasses to Mr. Keulemans on or about 12 March 1971. She was able to fix the time of the sale from a photographic film envelope bearing Keulemans' name, which Keulemans had picked up on the day he purchased the glasses from her.

Keulemans' employment with Ward was suspended until trial on 26 July 1971, when he was acquitted.

Keulemans then brought suit in the Circuit Court for Prince George's County against Ward, Johnson and Gilgenberg.[2] The four count declaration sought

---

1. It seems that no one asked how recently such glasses had been sold.

2. There was a fourth defendant, Charles Davis, also an employee of Ward. The action against him was dismissed by the trial court. No appeal was taken.

compensatory and punitive damages for false arrest; false imprisonment; malicious prosecution, and defamation. The case was removed to the Circuit Court for St. Mary's County for trial.

What caused us to grant certiorari is the procedural posture in which the case had reached the Court of Special Appeals. The case was tried twice. In the first trial, verdicts had been returned against Johnson only as to Count I (false arrest) and Count II (false imprisonment); against Ward only as to Count III (malicious prosecution), and against Ward, Johnson and Gilgenberg as to Count IV (defamation). The trial court denied the defendants' motion for judgment n.o.v., but granted a new trial after Keulemans declined to accept a remittitur.

Prior to the second trial, the court denied the defendants' motion to have the new trial limited to those defendants against whom verdicts had been returned in the first trial, relying on Maryland Rule 567 c. This determination was sustained by the Court of Special Appeals, correctly we think, because of the general nature of the verdicts which had been returned, and was not challenged before us.

At the second trial, directed verdicts were entered in favor of the defendants on the counts alleging false imprisonment and defamation, and the case was submitted to the jury on special issues on the false arrest and malicious prosecution counts.

The jury entered a verdict for $1,350.00 in compensatory damages on the false arrest count against Ward, Johnson and Gilgenberg and for $25,000.00 in punitive damages (but for no compensatory damages) on the malicious prosecution count against Ward, Johnson and Gilgenberg.[3]

Ward, Johnson and Gilgenberg, appellants before us, raise two questions:

(i) Was there probable cause for the arrest and prosecution of Keulemans?

---

3. On motion, the docket entries were corrected to reflect that the verdict of $1,350.00 was entered on Count I (false arrest).

    (ii) Should the motion for judgment n.o.v. have been granted at the conclusion of the second case, and the award of punitive damages for malicious prosecution stricken?

We propose to consider these in inverse order.

As regards the second contention, the rule of our cases is clear that there must be an award of compensatory damages, at least in nominal amount, for an award of punitive damages to be allowed to stand, *Shell Oil Co. v. Parker*, 265 Md. 631, 644, 291 A. 2d 64, 71 (1972); *B & B Refrigeration v. Stander*, 263 Md. 577, 582, 284 A. 2d 244, 247 (1971); *Kneas v. Hecht Co.*, 257 Md. 121, 125, 262 A. 2d 518, 521 (1970); *Delisi v. Garnett*, 257 Md. 4, 9, 261 A. 2d 784, 787 (1970); *Gorman v. Sabo*, 210 Md. 155, 162, 122 A. 2d 475, 478 (1956); *Heinze v. Murphy*, 180 Md. 423, 429, 24 A. 2d 917, 920-21 (1942); *Schloss v. Silverman*, 172 Md. 632, 642, 192 A. 343, 348 (1937).

But this does not necessarily mean that the verdict must fail, because in a proper case it can be molded or reformed to reflect what the jury manifestly and beyond doubt intended, *Davis v. Board of Education*, 168 Md. 74, 78-79, 176 A. 878, 880 (1935); *Diamond State Co. v. Blake*, 105 Md. 570, 575-76, 66 A. 631, 633-34 (1907); *Gamble v. Sentman*, 68 Md. 71, 77, 11 A. 584, 585 (1887); *Browne v. Browne*, 22 Md. 103, 115 (1864), citing *Hawks v. Crofton*, 2 Burrow 698, 699-700 (K.B. 1758); [4] 1 J. Poe, Pleading and Practice § 758, at 796 (5th ed. 1925), and cases cited in 2 J. Poe, § 758 n. 46, at 508 (6th ed. 1970); *see Traylor v. Grafton*, 273 Md. 649, 683, 332 A. 2d 651, 671-72 (1975), and *compare Gaither v. Wilmer*, 71 Md. 361, 18 A. 590 (1889). *See also Peroti v. Williams*, 258 Md. 663, 267 A. 2d 114 (1970).

An examination of the record makes it clear that the verdict of $1,350.00 entered on the false arrest count

---

4. In Hawks v. Crofton, 2 Burrow 698, 699-700 (K.B. 1758), Lord Mansfield agreed with counsel's statement " '[t]hat where the intention of the jury is manifest and beyond doubt, the Court will set right matters of form, and the mere act of the clerk,' " and further observed, "[a]nd I think that the present case is such a clear case, that the Court may here give judgment upon the substantial finding; though the clerk may have been irregular and faulty in point of form: it is very clear what the jury meant."

consisted of two elements: $1,000.00 for salary at $200.00 a week which Keulemans lost as a result of his suspension for five weeks while awaiting trial, and the $350.00 fee paid by Keulemans to defend him in the shoplifting case. Hence, the $350.00 fee was only recoverable in the malicious prosecution case.

The trial court recognized this, and cited it as a reason for the denial of the defendants' motion for a judgment n.o.v., made before judgment absolute was entered. It would have been appropriate at this juncture for the trial court to have reformed the verdict by transferring the $350.00 award from the false arrest count to the malicious prosecution count. We see no reason why this cannot be accomplished on remand.

The defendants argue that the defect in the verdict may only be corrected by the jury, or by the court, in the jury's presence. Alternatively, they argue that there was no effort made by the court here to correct the verdict. On the first point, they would be right, if the verdict were fatally defective, as, for example, would be a verdict which fails to assess damages. Such was the situation in *Gaither v. Wilmer, supra,* 71 Md. at 364. However, we find their argument on the second point unpersuasive, because we are satisfied that it is not too late to reform the verdict in this case.

We now turn to the defendants' first contention, that there was probable cause for the arrest and prosecution of Keulemans which would relieve them of civil liability, Maryland Code (1957, 1971 Repl. Vol.) Art. 27, § 551A (c). They rely, to a great extent, on language in the opinion of this Court in *Brewer v. Mele,* 267 Md. 437, 298 A. 2d 156 (1972):

> "As developments after the fact revealed, the appellant did, to be sure, have a creditable and innocent explanation for the possession of the tractor; but that subsequent revelation does not retrospectively alter the picture facing the deputy sheriff at his moment of decision. Probable cause will be measured by the circumstances as they

reasonably appeared to Deputy Sheriff Mele at the time when he initiated action. It is not dependent upon the actual state of the case as it may turn out upon subsequent investigation. [citing cases] The ultimate innocence of the arrestee. is not determinative of the legitimacy of his arrest. The prosecutor's honest belief in guilt based upon reasonable grounds establishes probable cause, even though the accused is, in fact, innocent. [citing cases]" 267 Md. at 451, 298 A. 2d at 165.

We regard this reliance as misplaced. In *Brewer,* the explanation was given *after* the arrest. Here, it was given *before.* We find ourselves persuaded by the view of the Court of Special Appeals that considering Keulemans' seniority, and Johnson's relatively short service; Johnson's knowledge of the nature of Keulemans' duties, and the plausibility of Keulemans' explanation, Johnson, as a private prosecutor, did not have probable cause to arrest Keulemans until *after* he had investigated Keulemans' explanation, and had found it without any basis in fact, *Banks v. Montgomery Ward & Co.,* 212 Md. 31, 41-42, 128 A. 2d 600, 605-06 (1957); *see* Restatement of Torts § 662, comment i at 408-09 (1938); W. Prosser, Torts § 119, at 842 (4th ed. 1971).

We have consistently held that punitive damages may only be awarded when there is an element of fraud, malice, evil intent or oppression which enters into and forms a part of the wrongful act, *Food Fair Stores, Inc. v. Hevey,* 275 Md. 50, 338 A. 2d 43 (1975); *H & R Block, Inc. v. Testerman,* 275 Md. 36, 338 A. 2d 48 (1975); *Wolf v. Levitt & Sons,* 267 Md. 623, 626-27, 298 A. 2d 374, 376 (1973); *Drug Fair v. Smith,* 263 Md. 341, 351-53, 283 A. 2d 392, 398-99 (1971); *Heinze v. Murphy, supra,* 180 Md. at 429-30.

It is clear, however, that punitive damages may be recovered where there is actual malice, or where malice may be implied from wantonness, or from want of probable cause in a case of false arrest, *Montgomery Ward & Co. v. Cliser,* 267 Md. 406, 421, 298 A. 2d 16, 25 (1972), or in a case of malicious prosecution, *Banks v. Montgomery Ward & Co.,*

*supra*, 212 Md. at 42; *Safeway Stores, Inc. v. Barrack*, 210 Md. 168, 175, 122 A. 2d 457, 461 (1956). *Compare, Siegman v. Equitable Trust Co.*, 267 Md. 309, 314-15, 297 A. 2d 758, 761 (1972).

Taking into account our conclusion that under the facts of this case, the jury could find that Johnson did not have reasonable grounds of suspicion at the time he arrested Keulemans and that there was a want of probable cause, the award of punitive damages was proper.

> *Judgment of Court of Special Appeals affirmed in part, modified in part; case remanded to that Court to be remanded to Circuit Court for St. Mary's County with instructions to reform verdict in accordance with views herein expressed; costs to be paid by appellants.*