559 A.2d 805

The BOARD OF TRUSTEES OF the BALTIMORE COUNTY COMMUNITY COLLEGES, Dundalk Community College

v.

RTKL ASSOCIATES, INC., et al.

No. 1622, Sept. Term, 1988.

Court of Special Appeals of Maryland.

June 30, 1989.
Certiorari Granted Nov. 13, 1989.

46

John A. Austin, Asst. County Atty. (Arnold Jablon, County Atty., on the brief), Towson, for appellant.

John W. Geldmacher (Parks, Hansen & Ditch on the brief), Towson, for appellees.

Argued before BLOOM, ROSALYN B. BELL and BELL (ROBERT M.), JJ.

ROSALYN B. BELL, Judge.

The Board of Trustees of the Baltimore County Community Colleges, Dundalk Community College contends in this appeal that the Circuit Court for Baltimore County erred in revising a jury verdict against RTKL Associates, Inc., an architectural firm, against which the College brought suit because of the partial collapse of the roof of the College's new physical education complex. Also named as defendants in the College's suit were Carl H. Gonnsen & Sons, Inc., the general contractor for the project, as well as James H. Carr, Inc., the subcontractor which obtained and inspected the specially designed roof trusses. The action included claims for negligence and breach of warranty. RTKL filed cross-claims against Gonnsen and Carr for both contribution and indemnity. Contribution claims were based on the Uniform Contribution Among Tort–Feasors Act, Md.Code Ann. Art. 50, § 16 *et seq.* (1957, 1986 Repl.Vol.). The indemnity claims were based upon the theory of active-passive negligence. The College dismissed against all defendants except RTKL prior to trial on the basis of a settlement with all but RTKL.

The settlement terms with Gonnsen and Carr were embodied in two separate agreements, both entitled "Joint Tort–Feasor Release and Indemnification Agreement." The respective releases executed by the College stated in pertinent part:

"8. The [College] understands and agrees to hold harmless and indemnify [Carr and Gonnsen] from any further liability, damages or financial responsibility of any kind or nature allegedly resulting from or arising out of the project. The [College] further agrees to indemnify and hold [Carr and Gonnsen] harmless from any claim against them by any other party seeking indemnity or contribution with regard to any claim brought by [the College] against such party for injuries, losses or damages allegedly resulting from or arising out of the project."

The provisions which pertained to contribution and indemnification differed slightly in form but not substance. The release executed between the College and Carr provided:

"6. It is the intention of the [College] to relieve [Carr] from any liability to make contribution to or to indemnify RTKL in the event that RTKL or Gonnsen are held liable to the [College]."

A virtually identical provision appears in the release executed with Gonnsen. Both releases were filed in the record.

A jury trial proceeded with the College against RTKL, and RTKL as cross-plaintiff and Gonnsen and Carr as cross-defendants. The jury returned the following verdict:

### "VERDICT SHEET

1. As to Count I, Negligence, do you find for the Plaintiff or the Defendant? <u>Plaintiff</u>
2. As to Count II, Breach of Contract, do you find for the Plaintiff or the Defendant? <u>Plaintiff</u>
3. If you find for the Plaintiff as to Count I or Count II, in what amount do you assess damages? <u>$557,296.00</u>
4. If you find for the Plaintiff, do you find that there was any negligence on the part of CARL GONNESEN [sic] and SON, INC. which caused or contributed to the failure? Yes: <u>X</u> No: ___
5. If you find for the Plaintiff, do you find that there was any negligence on the part of JAMES H. CARR, INC. which caused or contributed to the failure? YES: <u>X</u> NO: ___
6. As to the cross claims of RTKL ASSOCIATES, INC. for indemnity:

   a. If you answered 'Yes' to Question 4, do you find in favor of the Cross–Plaintiff, RTKL ASSOCIATES, INC. or the Cross–Defendant, CARL GONNESEN [sic] AND SON, INC.? <u>Cross–Plaintiff</u>

   If you find for the Cross–Plaintiff, RTKL ASSOCIATES, INC., in what amount do you assess damages? <u>$111,459.00</u>

b. If you answered 'Yes' to Question 5, do you find in favor of the Cross–Plaintiff, RTKL ASSOCIATES, INC., or the Cross–Defendant, JAMES H. CARR, INC.? Cross–Plaintiff

If you find for the Cross–Plaintiff, RTKL ASSOCIATES, INC., in what amount do you assess damages? $167,189.00" [1]

The trial court subsequently modified the verdict, entering judgment in favor of the College against RTKL for $185,765.33, exactly one-third (or its *pro rata* share) of the total verdict. The trial court, however, also entered judgments in favor of RTKL on its cross-claim against Gonnsen and Carr for $185,765.33, each, in effect *increasing* the verdict amount against Gonnsen and Carr. The amounts the trial court assessed against Gonnsen and Carr would be borne by the College by operation of the settlement contracts containing the indemnity provision.

## STANDING

Preliminarily, since neither Carr nor Gonnsen has proceeded with this appeal, RTKL has moved to dismiss. RTKL posits that the College (appellant) does not have standing to appeal as it is not directly aggrieved by the trial court's reduction of the jury's verdict. RTKL argues that the College received all the relief prayed for and its dissatisfaction stems from its release and indemnification agreements with Carr and Gonnsen.

The College, on the other hand, contends that the reduction of the jury's verdict when *combined* with the increase of the judgments against Carr and Gonnsen gives it sufficient standing to appeal because the combined effect wipes out any recovery it might have received. We agree the

---

1. It is important to note that the total verdicts in RTKL's favor on its cross-claim were exactly one-half of the College's verdict against RTKL in the main action, and were apportioned as between Carr and Gonnsen—60 percent against Carr and 40 percent against Gonnsen.

College has standing but view the issue from a different perspective.

■■■ As a general rule, a party may not appeal from a favorable judgment because that party is not considered to be aggrieved.[2] *Administrator, Motor Vehicle Administration v. Vogt,* 267 Md. 660, 664, 299 A.2d 1 (1973). A party may, however, appeal from a favorable judgment if the record shows that the party has a personal, pecuniary or property interest in the subject matter of the litigation and that interest will be directly and substantially injured by the trial court's prejudicial error. *Pattison v. Corby,* 226 Md. 97, 101, 172 A.2d 490 (1961); *Preston v. Poe,* 116 Md. 1, 6, 81 A. 178 (1911); *see Houchin Sales Co. v. Angert,* 11 F.2d 115, 118–19 (8th Cir.1926); *Tiger v. American Legion Post No. 43,* 125 N.J.Super. 361, 311 A.2d 179, 183 (1973).

This exception has been applied where a defendant was allowed to appeal from a judgment in favor of a co-defendant where that judgment affected the defendant's statutory right of contribution. *E.H. Koester Bakery Co. v. Poller & Baltimore Transit Co.,* 187 Md. 324, 326–27, 50 A.2d 234 (1947). Similarly, in *First Union Savings & Loan, Inc. v. Bottom,* 232 Md. 292, 296, 193 A.2d 49 (1963), the Court of Appeals upheld the right of a corporation with a direct interest in the suit to appeal, even though a conservator had been appointed to manage the corporation's affairs.[3]

■■■ In the instant case, it is clear from the record that the College had a substantial pecuniary interest in the disposition of the suit. In fact, under the verdict as entered

---

**2.** An aggrieved party to an appeal does not necessarily mean a litigant before the court. *Stevenson v. Schriver,* 9 G. & J. 324, 335 (1837).

**3.** *But see Pattison,* 226 Md. at 101, 172 A.2d 490 (a zoning case); *Manufacturers & Merchants Co. v. Pyles & Mitchell,* 125 Md. 317, 322, 93 A. 917 (1915) (a receivership case); and *Preston,* 116 Md. at 6, 81 A. 178 (also a receivership case), where the appellate court held there was not a sufficient direct interest for standing.

by the trial court, the College would pay out, to Carr and Gonnsen, twice the amount of the judgment against RTKL. Copies of the joint tort-feasor releases executed between the College and Carr and Gonnsen were filed with the trial court. Those release agreements indicate the net effect of a reduction and reformation of the jury's verdict on the College's pecuniary interests. Those releases form a part of the record before us.

The College has established a substantial pecuniary interest in the subject matter of the litigation. In addition, the College has shown the injurious effect that the trial court's judgment would have on this interest. For these reasons, we find that the College has standing to appeal the disposition of the cross-claim.

### REVISION OF A JURY VERDICT

The College contends that the trial court's revision was erroneous because it effectively deprived it of any recovery and transformed what the jury clearly meant as a contribution verdict into a verdict for indemnity. We agree with certain reservations and explain after setting forth the relevant legal principles.

■ A trial court is vested with a very limited power to correct a jury verdict which is defective in form, but which in substance clearly and definitively expresses the jury's intention. *Traylor v. Grafton*, 273 Md. 649, 683, 332 A.2d 651 (1975).[4] The trial court can correct, remold, or reform such a verdict so as to express the jury's clear and "definitely manifested" intention. *Polkes & Goldberg Ins., Inc. v. General Ins. Co. of America*, 60 Md.App. 162, 167, 481 A.2d 808 (1984), *cert. denied*, 302 Md. 288, 487 A.2d 292 (1985). In fact, this power of revision has sometimes been expressed as a duty. For example, in *Sun Cab Co. v.*

---

4. *See, e.g., Davis v. Board of Education*, 168 Md. 74, 78–79, 176 A. 878 (1935); *Diamond State Co. v. Blake*, 105 Md. 570, 575–76, 66 A. 631 (1907); *Gamble v. Sentman*, 68 Md. 71, 77, 11 A. 584 (1887), *aff'd*, 69 Md. 293, 13 A. 58 (1888); *Browne v. Browne*, 22 Md. 103, 115 (1864).

*Walston,* 15 Md.App. 113, 161–62, 289 A.2d 804 (1972), *affirmed in part and reversed in part,* 267 Md. 559, 298 A.2d 391 (1973), we stated that it was "the duty of the court to work the verdicts into form and make them serve" if the jury's intention is "manifest and beyond doubt" but the verdict is defective in form. In *Montgomery Ward & Co. v. Keulemans,* 275 Md. 441, 446–47, 340 A.2d 705 (1975), the Court remanded for the trial court to reform a malicious prosecution damage award to include $350 that had been mistakenly assessed by the jury as a part of its verdict for false arrest damages. The Court in *Montgomery Ward* specifically rejected the contention that the verdict could only be corrected by the jury, or by the court in the jury's presence. The Court pointed out, however, that the contention would be true only "if the verdict were fatally defective, as, for example, would be a verdict which fails to assess damages." *Montgomery Ward,* 275 Md. at 447, 340 A.2d 705. The College presents us with no Maryland case, nor have we located one independently, which presents a factual scenario similar to the instant verdict. We are convinced, however, that the trial court's reformation reflected neither what the jury intended nor what the instructions mandated.

—Relative Negligence—

We begin our explanation with some relevant calculations based on the verdict:

| | |
|---|---|
| a) Total verdict in College's favor against RTKL: | $557,296 |
| b) Half of this verdict: | 278,648 |
| c) Combined jury verdict on RTKL's cross-claim against Carr and Gonnsen: | 111,459 |
| | 167,189 |
| | 278,648 |
| d) 30% of total verdict, which is also the amount RTKL recovered on cross-claim against Carr | 167,189 |
| e) 20% of total verdict, which is also the amount RTKL recovered on cross-claim against Gonnsen: | 111,459 |

Under the jury verdict the effect would have been to award the College $557,296. Ignoring the settlement agreement and assuming all parties were solvent, the responsibility for payment of the award would have been distributed:

| | |
|---|---:|
| RTKL | $278,648 |
| Carr | 167,189 |
| Gonnsen | 111,459 |
| | $557,296 |

A closer look at the verdict reveals the following. The jury intended that the College recover damages for RTKL's negligence/breach of warranty.[5] Its findings in queries # 4 and # 5 show that it found negligence attributable to Gonnsen and Carr which contributed to the harm caused. The jury then proceeded to square Gonnsen's and Carr's negligence by the awards to RTKL.

■ What the jury apparently intended was to apportion the negligence between the defendants—RTKL responsible for 50 percent, Carr for 30 percent and Gonnsen for 20 percent. The doctrine of comparative or relative negligence has never been adopted in Maryland, either as to contributory negligence of a plaintiff as opposed to negligence of the defendant or as to the degree of negligence among two or more defendants. *See Lahocki v. Contee Sand & Gravel Co.*, 41 Md.App. 579, 614–16, 398 A.2d 490 (1979), *rev'd on other grounds*, 286 Md. 714, 410 A.2d 1039 (1980). The awards found in Question 3 and 6(a) and (b) of the verdict sheet indicate awards in mathematical proportion. A proportionate breakdown of this nature makes it clear that the jury wished to share the loss among the parties.

## CONTRIBUTION—INDEMNITY

In *Greyhound Lines, Inc. v. Cobb County, Georgia*, 681 F.2d 1327, 1332 n. 7 (11th Cir.1982), the Court of Appeals

---

**5.** It is unclear from the verdict sheet upon which theory (or both) that the jury awarded damages.

elucidated the difference between contribution and indemnity:

"The distinction between contribution and indemnity is that the former refers to apportioning damages between joint tortfeasors by requiring each to pay his proportionate share, while indemnity implies a shifting of the entire loss from the party who paid the judgment to the tortfeasor who should in fairness bear it. The distinction is often blurred."

Here, in effect, the jury required that each of the parties pay a proportionate share of the total award to the College. There is no evidence that the jury wished to shift the entire loss from RTKL to Carr and Gonnsen as would be required for indemnification. If this had been the case, based on its view of the relative negligence, the jury would have assessed $334,377.60 against Carr and $222,918.40 against Gonnsen, resulting in indemnification to RTKL of the $557,296 judgment against it.

RTKL argues, however, that, in addition to contribution, it *is* entitled to indemnification from Gonnsen and Carr. Thus, the question becomes: May RTKL secure both contribution and indemnity from Gonnsen and Carr? The answer is "yes, but." The right to contribution, which a concurrent wrongdoer may have from another culpable party, arises from the duty each of the wrongdoers owes to the injured party. The right to indemnity, however, arises from the obligations between the wrongdoers. *Pyramid Condominium Ass'n v. Morgan,* 606 F.Supp. 592, 598 (D.Md.1985).

Indemnity requires that, where one of the wrongdoers is primarily liable, that wrongdoer must bear the whole loss. *Park Circle Motor Co. v. Willis,* 201 Md. 104, 113, 94 A.2d 443 (1952). The joint tort-feasors must have had some sort of relationship prior to the tort which justified the claim for indemnity. *See Council of Co-Owners Atlantis Condominium, Inc. v. Whiting-Turner Contracting Co.,* 308 Md. 18, 41, 517 A.2d 336 (1986) (developer

entitled to indemnity from independent contractor employed by developer whose negligence actually caused the breach); *Crockett v. Crothers,* 264 Md. 222, 227–28, 285 A.2d 612 (1972) (contract providing for indemnification which was executed between the joint tort-feasors prior to the tort); *Orient Overseas Line v. Globemaster Baltimore, Inc.,* 33 Md.App. 372, 394, 365 A.2d 325 (1976), *cert. denied,* 279 Md. 682, 683, 684 (1977) (shipowner permitted indemnification from stevedore and terminal operator where shipowner is held liable for loss caused by them).

In deciding whether to grant indemnity, ordinarily an active-passive analysis will be employed. *Gardenvillage Realty Corp. v. Russo,* 34 Md.App. 25, 40, 366 A.2d 101 (1976). Under this analysis, a party is only entitled to indemnification when the party's actions, although negligent, are considered to be passive or secondary to those of the primary tort-feasor. *Pyramid,* 606 F.Supp. at 596; *Park Circle,* 201 Md. at 113, 94 A.2d 443. The College relies on *Pyramid* to establish that, unless passive negligence is clear from the complaint, indemnity will not lie. The College reads too much into *Pyramid.* There, the issue came before the court on a motion to dismiss. Hence, the determination was made by referring to the original complaint. If the complaint alleges conduct that constitutes active negligence on the part of the party seeking indemnification, or if it is clear from circumstances revealed in the complaint that liability would only arise from proof of active negligence, there is no basis for an indemnity claim. *Pyramid,* 606 F.Supp. at 596.

In the instant case, the College's complaint alleges a breach of duty (including active and passive negligence) on the part of RTKL in "negligently designing, approving and supervising the aforesaid Physical Education building," particularly the wooden bowstring roof truss system. This allegation is upheld by the jury's subsequent verdict which assigns a 50 percent share of the responsibility to RTKL for payment to the College. The jury, however, could have determined from the evidence in the case that the negli-

gence of RTKL as it related to that of Gonnsen and Carr was of a passive character, namely only that of supervising. Hence, indemnity was not precluded nor mandated to RTKL as a matter of law.

—Jury Instructions—

RTKL argues that the jury instructions stated specifically that any judgment entered in favor of RTKL against the cross-defendants Carr and Gonnsen for indemnity was to be in the same amount as was entered against RTKL. Since the jury found for RTKL in answer to question 6 on the cross-claims for indemnity, the amounts apportioned between Carr and Gonnsen were surplusage. Thus, it contends, the jury failed to follow the instructions and the entry of amounts cannot change a verdict for indemnity into one of contribution. We agree, again with reservations.

RTKL contends the error here was of the College's making. After the taking of the verdict, this colloquy occurred:

"[COUNSEL FOR RTKL]: Your Honor, I don't know what we have here [except] that it [—] I think the verdict is inconsistent as to the indemnity claims.

"THE COURT: I don't think so.

"[COUNSEL FOR THE COLLEGE]: I don't either, your Honor."

RTKL failed to particularize why it was inconsistent. At that moment, there was no error on the part of the trial judge as he was not made aware of the basis for the generalized concern. By the same token, the College was not aware of what was then a latent inconsistency in the verdict. While ordinarily we might hold that neither side protected the issue on appeal, the subsequent actions of the parties and the trial judge, as will be described in more detail later, made it appropriate and necessary for us to pursue the issue further.

As stated earlier, where a discrepancy exists, the verdict can be "molded or reformed to reflect what the jury manifestly and beyond doubt intended." *Montgomery Ward,* 275 Md. at 446, 340 A.2d 705. Here, on the one hand, the

instructions and verdict sheet used the word "indemnity"; on the other hand, the jury manifested its intent to return a verdict for contribution with its final figures. Does the verdict here contain a discrepancy that permits molding and reformation "to reflect what the jury manifestly and beyond a reasonable doubt intended"? We think not and will explain further.

## POST–TRIAL MOTIONS

After the jury entered its verdict, RTKL filed a Motion to Reduce the Judgment in accordance with Art. 50, § 19,[6] a Motion to Further Reduce the Judgment by Two Hundred Thousand Dollars ($200,000) and a third motion alternatively styled as a motion for Judgment NOV, or to alter, amend or revise the cross-claim judgments pursuant to MD.Rules 2–532, 2–534, and 2–535.

A hearing was held on the motions on April 5, 1988 and supplemental memoranda were subsequently filed. Upon consideration of the verdicts, motions and memoranda of counsel and releases filed, the court ordered that judgment be entered in favor of the College against RTKL in the amount of $185,765.33 and a judgment in favor of RTKL against Gonnsen and Carr in the amount of $185,765.33 *each*, plus costs. The Motion to Further Reduce the Judgment by $200,000 was denied.

While the trial judge had a number of choices available based on the motions filed, he certainly could not reduce the judgment to $185,767.33 and enter judgments against both Carr and Gonnsen for $185,767.33 each. The affirmative recovery in favor of RTKL against Gonnsen and Carr awarded RTKL a double indemnity, as judgments ran

---

**6.** Section 19 provides:

"A release by the injured person of one joint tort-feasor, whether before or after judgment, does not discharge the other tort-feasors unless the release so provides; but reduces the claim against the other tort-feasors in the amount of the consideration paid for the release, or in any amount or proportion by which the release provides that the total claim shall be reduced, if greater than the consideration paid."

against both individually. This also had the effect of nullifying any recovery by the College, since by the terms of the releases the College was, in turn, required to indemnify Gonnsen and Carr in the amount of the affirmative recovery or $185,765.33 each. There is no doubt that the jury did *not* intend to have the College pay any of the negligent parties, which is the net result of the trial court's revisions. The revision in the instant case had the unfortunate result of effectively erasing a jury verdict of $557,296.00. Would the jury have countenanced this result? We think not. This type of additur or alteration of the jury's verdict is not supported by relevant case law in Maryland. *See Millison v. Clarke,* 32 Md.App. 140, 143, 359 A.2d 127, *cert. denied,* 278 Md. 728 (1976). Nor is it supported by federal decisions. *See Dimick v. Schiedt,* 293 U.S. 474, 480, 55 S.Ct. 296, 298, 79 L.Ed. 603 (1935). Similarly, a motion for Judgment NOV, standing alone, cannot be the basis for either increasing or decreasing the verdict. *Millison,* 32 Md.App. at 143, 359 A.2d 127.

Certainly, the jury did not intend to absolve RTKL of all liability, much less grant it a bonus for its acts. Certainly, the jury sought to absolve RTKL of one-half the liability. Certainly, in doing this the jury failed to follow the trial court's instructions. Certainly, it is clear that the jury returned a verdict for what was termed indemnity to RTKL against Carr and against Gonnsen. The College did not and does not object to revision of the verdict against RTKL which would reflect one-third the award of the jury; it does object to the totality of the verdict and did, along with Carr and Gonnsen, object to what amounted to an additur.

## CONCLUSION

A special verdict is permitted by Rule 2–522(c) and in fact serves a useful and helpful purpose in "just such cases as this, involving multiple issues and multiple parties, and its use is in the discretion of the court." *Sun Cab Co.,* 15 Md.App. at 161, 289 A.2d 804 (referring to predecessor Md.Rule 560). Great care must be taken, however, in framing the questions. Moreover, while the trial court

retained the power to answer issues not submitted under the special verdict and to revise the verdict prior to the entry of final judgment, it did not have the power to restructure the jury's verdict in a manner inconsistent with that verdict. *See Food Fair Stores, Inc. v. Lascola,* 31 Md.App. 153, 355 A.2d 757 (1976).

Based on what now is 20–20 hindsight, perhaps the verdict sheet was less than perfect; perhaps the jury needed to be told that, if it found that Carr and Gonnsen were negligent, the law would establish the amount of contribution, or perhaps some other factor was at play. Regardless of how the result here might have been avoided, the trial court could not, after the dismissal of the jury, resolve the discrepancy between the decision of the jury, as expressed in its verdict, and the law and instructions, as given to the jury. The awards against *both* Carr and Gonnsen merely compounded the inconsistencies. The verdict of the jury, on the one hand, and the instructions and the law, on the other, are so inextricably intertwined and are so inconsistent that, out of fairness, we see no solution other than to order a new trial.

JUDGMENTS REVERSED; CASE REMANDED FOR A NEW TRIAL.

COSTS TO BE PAID BY APPELLEE RTKL.