FOOD FAIR STORES, INC. ET AL. *v.*
BARBARA LASCOLA ET VIR

[No. 300, September Term, 1975.]

*Decided April 13, 1976.*

154

The cause was argued before MORTON, POWERS and MELVIN, JJ.

*Frank J. Vecella,* with whom were *Anderson, Coe & King* on the brief, for appellants.

*Guy M. Albertini,* with whom were *Goldstein & Albertini* on the brief, for appellees.

POWERS, J., delivered the opinion of the Court.

This case was initiated by a suit filed in the Superior Court of Baltimore City by Barbara Lascola and Wayne A. Lascola, her husband, against Food Fair Stores, Inc. and Betty McClain, later referred to in the record as Betty McClain Williams. The declaration was originally filed in four counts. The first alleged that Mrs. Lascola was falsely imprisoned by the defendants, and the second alleged that she was slandered by the defendants. A demurrer to the third count as duplicitous was sustained, and it was eliminated from the case. In count four, Mr. Lascola adopted his wife's allegations and claimed damages against the defendants because their wrongful conduct caused him to incur medical expenses for the care of his wife.

## The Facts Before The Trial Court

The events upon which the suit was based occurred on 13 January 1972. The suit was filed on 26 June 1972 and after both sides engaged in various discovery proceedings, the case was tried before a jury and Judge James A. Perrott in the Superior Court of Baltimore City, beginning on 23 January 1975 and concluding with the entry of judgments

nisi on 30 January 1975. From final judgments thereafter entered in favor of both plaintiffs against both defendants, this appeal was taken.

The facts as Mr. and Mrs. Lascola relate them in their brief are these:

"On January 13, 1972, Plaintiff Barbara Lascola was in a Food Fair Store and after selecting groceries totalling $71.05, went through the cash register line where cashier Ann Darr, Food Fair employee, tabulated her groceries. Plaintiff (paid for the groceries by check and she) went to the manager's office, cashed a personal check in the amount needed to pay for the bill and returned to the register to pay for the groceries. Cashier Ann Darr received Plaintiff's cash, helped Plaintiff bag her groceries, then began to wait on the next customer in line. The evidence was conflicting about whether the cashier gave Plaintiff her receipt or cash register tape. Plaintiff said she was given the tape and Defendants said she was not. Neither the Plaintiff nor the Defendants could produce the tape.

"The Plaintiff then left the store with two carts full of groceries and went outside to the other end of the apron in front of the store to get her automobile, leaving the carts on the apron. She had to go to the other end of the store because this is where she had parked her car as it was very crowded that day.

"As the Plaintiff came back and opened the trunk of her car and started to put her groceries away, she heard someone yell, 'Miss, Miss,' real loud, 'you have got to come back to the store. You didn't pay for your groceries.' These words although in conflict with what Defendants say happened, were spoken by the Defendant, Betty Williams. The Plaintiff tried to tell Defendant Betty Williams that she had paid for the groceries, however, was

told, 'I can't help that. The girl still has the tape. She said you didn't pay.' At this time, people kept coming around and they were stopping. After the groceries were placed in the trunk of Plaintiff's automobile, the Defendant, Betty Williams took ahold of Plaintiff's arm and told her she had to go back into the store. The Plaintiff at this time was scared and getting sick in the stomach. The Plaintiff was taken back into the store by Betty Williams, Defendant, and brought to the cashier where she had been checked out even though she did not want to go back into the store. At this time everything seemed to stop in the store and all the people were standing around. Finally Betty Williams came out to the Plaintiff and told her she was free to go, that the total had checked out correct.

"While this incident was in the process of happening and Defendant, Betty Williams was outside of the store with the Plaintiff, the store manager, Earlbeck had immediately realized that a mistake had been made by Ann Darr and could see this on the tape at her register.

"The Plaintiff and Defendant, Betty Williams had known each other for a number of years prior to this incident, having been neighbors, both living on Yarnall Road. The Defendant Betty Williams knew that Plaintiff had a problem with her nerves."

What conflicts there were in the evidence are shown by the following recitals of the evidence which appear in the brief of appellants:

"Cashier Ann Darr presumably received plaintiff's cash (but unbeknownst to her at the time), put it in the cash register drawer, helped plaintiff bag her groceries, then began to wait on the next customer in line. * * * The next customer in line had a small order, but when it was totalled it amounted to a figure in excess of $100. Cashier Ann Darr was

greatly surprised by this, and it was her immediate recollection and reaction that the plaintiff may not have given her the cash for the groceries. In addition, she said plaintiff's receipt or cash register tape was still on the register and not torn off the long roll of cash register tape, thus was part of the next customer's order. She spoke to defendant Betty Williams, a fellow employee who was a floor girl, a position several levels below the manager and told her she did not remember whether plaintiff had paid her for the groceries or not.

"Plaintiff could be seen out the front window of the store where she was about to enter her car to bring it up to Food Fair's front sidewalk apron where her groceries were in a cart inside the railing around the front of the store. Defendant Williams said, 'Oh, I know her, that's Barbara Lascola, I will go out and ask her.' Defendant Williams then went outside and approached plaintiff as she drove her car up to Food Fair's apron and got out, defendant Williams saying to the plaintiff, 'Barbara, Ann does not recall whether or not you paid her for your order . . . would you mind coming back into the store.' Whereupon, plaintiff said, 'Well, Betty, I thought that I paid her because I cashed a check and then went back to her', and then said she wouldn't mind coming back in, but first would have to put the groceries in the trunk of her car. There was no one else around at the time. The two women then proceeded to load the groceries into the trunk of plaintiff's car, then walked back into the store together, defendant Williams pushing plaintiff's empty cart. About the time they got inside, the error had been found and verified and it was clear that plaintiff had in fact paid for the groceries, and that a mistake had been made by the cashier. Plaintiff was thanked for coming back into the store by not only defendant Williams, but by the cashier and the store manager and apologies were

extended. Plaintiff acknowledged these apologies, understood the situation and did not appear to be in any way upset. After chatting a few minutes with defendant Williams, plaintiff then left the store and went home."

Although the evidence conflicted in some respects, for the purpose of our decision in this case we need not be concerned with those conflicts. We look at the evidence in the light most favorable to the Lascolas.

### Procedure In The Trial Court At The End Of The Trial And After The Trial

At the close of all the evidence the defendants moved for a directed verdict in their favor. The motion was denied. The case was submitted to the jury on what the court described to the jury as issues. A paper setting forth the questions and the answers of the jury [1] is a part of the record. It is reproduced here:

"1. On the slander count, do you find in favor of the plaintiff or the defendants? ___PLAINTIFF___ .

---

1. An examination of the transcript may provide an explanation for the apparent equivocation by the jury in its answer to a part of question No. 4 as to finding against defendant Betty Williams.

While the jury was out, it sent a question to the Court:

"If you found in favor of the Plaintiff on Issue Number 2, do you find against the Defendant, Defendant Betty Williams, yes or no? If the vote is yes, will Betty Williams be liable personally? "

With the agreement of all counsel the judge sent back the answer, "Yes".

When the jury had reached its verdict the answers were announced by the foreman. The answer to No. 4 as to Betty Williams was "No", and as to Food Fair Stores was "Yes". The judge called counsel to the bench and expressed concern that the verdict was inconsistent. He decided to send the jury back to deliberate further, and pointed out to them the possible inconsistency.

A juror said:

"When we wrote you the note, we wanted to know if Betty Williams — could she be personally responsible, and the answer came up to us, 'yes,' and we don't want to hold her responsible."

Counsel for the defendants noted an exception to a response by the court, and the court said:

" * * * we will let the issues stand as they were originally responded to."

The members of the jury were polled, the clerk read the issues and the answers, and the jury was hearkened to the verdict as the court recorded it. Judgments nisi were entered.

"2. On the false imprisonment count, do you find in favor of the plaintiff or the defendants?
PLAINTIFF_____.

"3. If you found in favor of the defendants on both issues #1 and #2 above, do not answer any further issues.

"4. If you found in favor of the defendants on issue #2, do not answer this issue. If you found in favor of the plaintiff on issue #2, do you find against defendant Betty Williams? (yes or no) ~~XXX~~ NO ~~XES~~____; do you find against defendant Food Fair Stores? (yes or no) YES____.

"5. If you found in favor of the plaintiff on either issue #1 or #2:

(a) What is the amount, if any, you assess as compensatory damages to plaintiff Barbara Lascola? $5,000.00.

(b) What is the amount, if any, you assess as punitive damages to plaintiff Barbara Lascola? $10,000.00.

(c) What is the amount, if any, you assess as compensatory damages to plaintiff Wayne Lascola? $2,000.00 ."

We set out below the docket entries in the case reflecting the answers of the jury and the other proceedings thereafter, including the final judgment from which this appeal was taken.

"30 Jan. 1975    The Jury answered Issues 1 and 2 'Plaintiff'; Issue 3 'Not Answerable'; Issue 4 'No as to Betty McClain Williams and Yes to Food Fair Stores'; Issue 5-a '$5,000.00'; Issue 5-b '$10,000.00' and Issue 5-c '$2,000.00'.

30 Jan. 1975    Judgment Nisi in favor of Plaintiff Barbara Lascola for the sum of

$5,000.00 as compensatory damages and for $10,000.00 as punitive damages and in favor of Plaintiff, Wayne Lascola for the sum of $2,000.00 as compensatory damages as against defendant, Food Fair Stores, Inc. only.

30 Jan. 1975    Judgment Nisi in favor of Defendant, Betty McClain Williams for costs of suit.

4 Feb. 1975    Plaintiffs' Motion for New Trial as to Issue No. 4 concerning Defendant, Betty McClain Williams only filed.

21 Feb. 1975    Verdict in favor of the Plaintiffs as against Defendant Betty McClain Williams, individually, entered by the Court in view of the fact that this issue was not presented to the Jury for consideration, pursuant to Maryland Rule 560 (PERROTT, Judge).

21 Feb. 1975    Plaintiffs' Motion for a New Trial 'DENIED' (PERROTT, Judge).

21 Feb. 1975    Judgment absolute in favor of the Plaintiff, Barbara Lascola for the sum of $5,000.00 as compensatory damages and the sum of $10,000.00 as punitive damages and in favor of the Plaintiff, Wayne Lascola for the sum of $2,000.00 as compensatory damages as against defendants, Food Fair Stores, Inc. and Betty McClain Williams and costs."

The motions for directed verdict made by both defendants at the close of all of the evidence raised the sufficiency of the

evidence to support a finding against them on the false imprisonment count and on the slander count, as well as the sufficiency of the evidence to permit consideration by the jury of punitive damages. They also questioned the sufficiency of the evidence to permit a finding that the defendant Betty Williams was acting within the scope of her authority so as to entitle the jury to find against Food Fair Stores, Inc.

## Contentions On Appeal

In this Court the appellants raise the same questions of sufficiency that were raised by their motion below. They also claim that the trial court erred in several specified respects in declining to grant requested instructions and in giving other instructions over exception. They also contend that the award of $2,000.00 to Mr. Lascola was not warranted by the evidence. Lastly, they contend that the trial judge erred when, at the hearing on a motion by the Lascolas for a partial new trial, he directed the entry of judgment absolute against Betty McClain Williams rather than judgment for her in accordance with the judgment nisi.

## The Entry Of Judgment Absolute
## Against Defendant Williams

We shall consider the last contention first. Maryland Rule 560, Special Verdict, authorizes trial courts, § a 1, to "require a jury to return a special verdict in the form of a special written finding upon each issue of fact." The Rule further provides in § a 6 that "Upon the return of the special verdict of the jury, the court shall direct the entry of an appropriate judgment *nisi.*"

Two other subsections of Rule 560 a are relevant to the procedure that was followed in this case. They are:

> 4. "If in submitting the issues the court omits any issue of fact raised by the pleadings or by the evidence, each party waives his right to a trial by jury of the issue so omitted unless before the jury retires he demands its submission to the jury.

5. "As to an issue omitted without such demand the court may make a finding; or if it fails to do so, it shall be deemed to have made a finding in accord with the judgment *nisi* entered."

It should be noted that the questions were not prepared by Judge Perrott, nor at his request, but were prepared and suggested by counsel for the appellants. No objection was made to their use as proposed.

A reading of the questions makes it clear that they were not designed to call for a finding by the jury upon any issue of fact. They amounted to nothing more than a means of recording on paper the step by step process which a jury must go through in arriving at a general verdict. In this case the questions were well suited to assist the jury because of the possibility of confusion in a case involving multiple issues, multiple plaintiffs, and multiple defendants. The findings that the jury was requested to record were the ultimate findings involved in any general verdict where the verdict must be for one or more plaintiffs or for one or more defendants, on multiple issues, and must, if appropriate, assess damages.

In his very comprehensive instructions Judge Perrott explained to the jury numerous issues of fact which it should consider. Several, but by no means all of those issues, were whether Mrs. Williams acted with malice toward Mrs. Lascola, whether she acted with or without justification or excuse, whether Mrs. Williams in fact slandered Mrs. Lascola, whether she in fact falsely imprisoned Mrs. Lascola, and whether, if she did those things, she was acting in the performance of her duties and functions and within the scope of authority conferred upon her by her employer. The jury was also instructed to find from the evidence whether Mrs. Williams had a qualified privilege to act as she did and whether that privilege was abused. The judge further told the jury that if they found from the evidence that the only cause of the incident was a mistake by the cashier, such mistake would not be the basis for a cause of action. The court also explained to the jury several factual

issues it might be required to consider on the question of damages.

Timely after the recording and hearkening of the jury to its verdict, and the entry of judgments nisi, the appellees filed a motion for a new trial "as to issue #4 concerning the defendant, Betty McClain Williams, only", and for grounds asserted that the verdict was against the evidence, against the weight of the evidence, against the instructions of the court, and against the law.

No other post trial motions were filed by any party.

At the hearing on the motion for new trial counsel for the Lascolas explained what he wanted the court to do:

> "Now, what we request is that the Court change the verdict against the Defendant McClain to conform with the verdict against Food Fair, and we are basing this mainly upon the question which is on the record, which, I think, was abundantly clear that they simply — it was apparent that they did not want to hold Mrs. Williams in, but I think they were concerned about having her pay the verdict personally, which then, takes us into the Issue which was missing in the Issues submitted to the Jury, the Respondeat Superior issue which I feel, under Rule 560, the Court could now enter a decision regarding an omitted issue and find that in fact, it was a Respondeat Superior situation and that the verdict should have been against her, technically, also."

After a rather extended discussion of the problem among the court and counsel, and a reference to the problems which the record showed were encountered by the jury in returning with its answers to the questions, Judge Perrott said:

> "However, the issue of joint liability of the individual Defendant employee and Food Fair Stores, Inc., the employer was never submitted to the Jury and as I understand that law, then the Court can, and I have determined to do so, enter a

judgment against the individual, Betty McClain, as well as Food Fair Stores, Inc., so that it will be a consistent verdict."

* * *

"The verdict should have been against both Defendants and I so enter it.

"MR. VECELLA [Counsel for defendants]: If Your Honor please, of course, I take exception to Your Honor's now conforming the verdict when the Jury —

"THE COURT: Well, as I understand the law, when Issues are presented to the Jury, the Court has the right to do that if that particular Issue is not presented to the Jury and I submit it wasn't, so that will give you another point that you can appeal on.

"I see no need, Gentlemen, to order a new trial in this case. I think this case was thoroughly tried and, I might say, well tried."

The motion for a new trial was denied and, as the docket shows, a judgment absolute was entered against both defendants in favor of the plaintiffs for the damages assessed by the jury.

The Court of Appeals has frequently called to the attention of the bench and bar the advantages of utilizing Rule 560, where appropriate, to require the jury to make special written findings upon issues of fact. As early as the case of *Alexander v. Tingle*, 181 Md. 464, 30 A. 2d 737 (1943), the Court said, at 471:

"Also, this is the type of case in which it would probably be desirable to frame special issues for submission to the jury in accordance with the practice established by Rule 7, 'Special Verdicts,' Part Three, III, of the General Rules of Practice and Procedure, 1941, [the forerunner of Rule 560] for juries would be less likely in cases such as this to decide specific issues contrary to the weight of

the evidence, than they would be in deciding such a general issue as whether to find for plaintiff or for defendant."

See also *Brown v. Ellis*, 236 Md. 487, 497, 204 A. 2d 526 (1964), and *Fowler v. Smith*, 240 Md. 240, 245, 213 A. 2d 549 (1965). The Court has pointed out that "Issues are authorized by the rule and are peculiarly appropriate in consolidated cases." *Wright v. Baker*, 197 Md. 315, 317, 79 A. 2d 159 (1951). In the same vein we said in *Sun Cab Co. v. Walston*, 15 Md. App. 113, 289 A. 2d 804 (1972), at 161:

> "The cases were submitted to the jury requiring a special verdict upon written issues which were simple and direct, and called for simple and direct answers. This procedure, authorized by Maryland Rule 560, was designed for just such cases as this, involving multiple issues and multiple parties, and its use is in the discretion of the court. * * * The issues were well designed to result in findings by the jury upon all facts necessary for the entry of proper judgments determining the rights of all the parties in all the cases before the court."

In *Lichtenberg v. Joyce*, 183 Md. 689, 39 A. 2d 789 (1944), the Court of Appeals considered a contention of the appellant that he had been denied a complete trial by jury, because the issues submitted to the jury under the Rule (then Rule 7) omitted one or more issues of fact raised by the pleas or by the evidence. The issues had determined the right to recover, but not the amount due. The trial judge determined the amount, and included it in the judgment he directed to be entered. The Court approved that procedure. It pointed out that under the Rule, jury trial is waived as to an issue omitted from those submitted to the jury, and the court may make the finding, and if it fails to do so, it shall be deemed to have made a finding in accord with the judgment.[2]

---

2. Under the former Rule, the court directed the entry of a final judgment. Under Rule 560 it directs the entry of a judgment *nisi*.

There appears to be one narrow exception, not relevant in the present case, to the rule that all issues, whether submitted to the jury or not, are subsumed in the judgment nisi entered after the special verdict. In *Ebert v. Millers Fire Ins. Co.*, 220 Md. 602, 155 A. 2d 484 (1959), the Court held that when both parties had agreed that a certain question was to be reserved for determination by the Court, it cannot be contended that the question was implicitly decided by the entry of a judgment nisi.

The very recent case of *Traylor v. Grafton*, 273 Md. 649, 332 A. 2d 651 (1975), was a suit for liquidated damages for breach of contract. The pleadings and the multiple parties contributed a certain degree of complication to the issues, which were essentially simple. When the jury, which was obviously confused, announced a verdict which was incomplete, the trial judge then submitted three issues to them and sent them back to the jury room to make a special finding on each issue. There was no issue which required a finding of the amount of damage. After the answers of the jury were recorded, and after other post trial proceedings,[3] the judge entered a finding that the damage was $4,000, and directed the clerk to enter judgments nisi accordingly. The Court of Appeals approved the finding by the judge on an issue not submitted to the jury, but concluded that the judgments were entered under the wrong count of the declaration. The Court reversed the judgment, and, citing Rule 875, entered a judgment "as ought to have been entered in the lower court."

We have observed that the questions submitted to the jury did not truly require findings on issues of fact. We do not mean to suggest that it was not entirely proper to submit the questions. Undoubtedly they were helpful to the jury in arriving at its verdict. But we very much doubt, although we need not rule, whether the questions submitted were within the scope of and governed by Rule 560. Assuming, however, that the procedure provided in Rule 560 applied, the entry of

---

**3.** Other questions not relevant here involved the law of Pennsylvania on joint and several liability of an agent and his undisclosed principal, and on which counts judgment should be entered and which counts dismissed.

judgments nisi terminated any power that the trial judge had to make a finding of fact or in any other way to mold the findings into a judgment. As we said in *Sun Cab Co. v. Walston, supra,* at 161:

> "It is of interest to observe that the transcript shows that after the foreman announced the jury's answers to each of the issues, and the individual jurors were polled as to those answers, the jury was harkened to its verdicts in the four cases in the form of general verdicts. They were recorded on the respective dockets as general verdicts, and judgments nisi as required by Rule 560 a 6 were entered. The process of molding the jury's findings into proper shape to become the basis for judgments of the court was completed."

After the entry of the judgments nisi the trial judge had the same power he has over verdicts or interlocutory judgments — the power to entertain and rule upon timely motions, such as motions for a new trial or for judgment n.o.v. The motion for a new trial which was filed in this case was heard and denied. There was no motion for judgment n.o.v. The judge had no power at that stage of the case to make any finding of fact, even if he had such power under Rule 560 a 5 as to an omitted issue *before* the judgment nisi was entered.

It may be, as Judge Perrott remarked concerning the inconsistency, that it was "the jury's way of showing sympathy, however it is not the law." But of course, sympathy is not and cannot be an issue here. The fact of inconsistency between one verdict and another returned by the same jury does not automatically make either verdict illegal. An attack on the verdicts as defective is made in the trial court, by a motion for a new trial or by a motion in arrest of judgment. *Havens v. Schaffer,* 217 Md. 323, 325, 142 A. 2d 824 (1958).

As far as the appellant Betty McClain Williams is concerned, we look to the judgment nisi entered in her favor

for costs of suit.[4] While its effect might have been vitiated by the grant of a new trial, that was not done. The only thing that remained to be done was the entry of a judgment absolute on the judgment nisi. We must accordingly reverse the judgment absolute thereafter entered against Betty McClain Williams, and, under Rule 1075, "enter such judgment as ought to have been entered by the lower court." *Traylor v. Grafton, supra,* at 689.

### The Judgments Against Food Fair For Slander And False Imprisonment

There remain in the case the judgments against Food Fair Stores, Inc. in favor of Mrs. Lascola for compensatory damages and for punitive damages, and in favor of Mr. Lascola on his derivative claim. The jury found against Food Fair on slander and on false imprisonment, but the damages assessed were not separated.

In *Jacron Sales Co. v. Sindorf,* 276 Md. 580, 350 A. 2d 688 (1976), the Court of Appeals recognized the sweeping changes made in the law of defamation by the decision of the United States Supreme Court in *Gertz v. Robert Welch, Inc.,* 418 U. S. 323, 94 S. Ct. 2997, 41 L.Ed.2d 789 (1974). The Court of Appeals, within the framework of the federal constitutional rights and restrictions established in *Gertz,* made what might also be considered as sweeping changes in the law of defamation in Maryland. The Court discussed the nature of the tort (now to be judged by the standard of negligence rather than of absolute liability), the standard of proof, conditional privilege, malice, and the measure of damages.

The Court of Appeals was soon presented the opportunity to apply the newly explained law of defamation, and did so in *General Motors Corp. v. Piskor,* 277 Md. 165, 352 A. 2d 810 (1976). That case involved multiple counts for slander, assault, and false imprisonment. The jury had awarded

---

4. It is not entirely clear whether the jury's intent that Mrs. Williams not be held responsible extended to the whole case, but that question was not raised here. If there was a question below, it was resolved by the entry of the judgment nisi in her favor.

compensatory damages separately for each tort, but had awarded punitive damages in one undivided sum. See *Montgomery Ward & Co. v. Cliser*, 267 Md. 406, 298 A. 2d 16 (1972). The Court said in *Piskor*, at 172:

> "In conformity with what was then controlling state law, the trial of the defamation claim in this case proceeded on the premise of liability without fault, rather than upon some greater standard such as negligence. Since the *Gertz* and *Jacron* principles are equally applicable here, we hold that a new trial is required where the plaintiff shall be required to establish the liability of the defendant through proof of falsity and negligence by the preponderance of the evidence, and may recover compensation limited to actual injury as defined in *Gertz* and *Jacron*."

The Court said further, at 175:

> " * * * since the jury found the defendant liable on all three claims, and awarded compensatory damages in varying sums on each, we cannot determine the extent, if any, to which the sum allowed for punitive damages was specifically linked to the slander. The punitive damage award, therefore, must be reversed."

We apply here the principles of law which the Court of Appeals held so clearly in *Jacron* and *Piskor* to be the law of Maryland. We attempt no amplification or further discussion.

In the case now before us the jury did not separate either the compensatory or the punitive damages awarded to Mrs. Lascola between the two causes of action of slander and false imprisonment. We cannot determine the extent, if any, to which the sums allowed for damages were specifically linked to one or the other of the causes of action, nor from which Mr. Lascola's cause of action derived.

Confronted with a pre-*Jacron* directed verdict in a slander case, and because of *Jacron's* changes in the law of

defamation in Maryland, we said in *Stephens v. Dixon*, 30 Md. App. 56, 351 A. 2d 187 (1976), at 66:

> "From the foregoing excerpts from the Court's opinion in *Jacron*, it is apparent that the parties, as well as the court in the trial below, were trying the issues in accordance with a slate of rules no longer valid and effective. In assessing the defamation issues posed in this appeal, we are governed not by the old rules but by the principles announced in *Jacron* which became effective during the pendency of this appeal. *Firstman v. Atlantic Constr. & Supply*, 28 Md. App. 285 [, 345 A. 2d 118] (1975). Because both parties to the appeal are entitled to the benefit of those principles, we shall reverse the judgment entered on the directed verdict in favor of the appellee and remand the case for a new trial."

Likewise in the present case, the issues between the Lascolas and Food Fair Stores, Inc. as to both causes of action and as to all damages assessed are either a part of or are so inseparably intertwined with the cause of action for slander that justice requires a retrial of the issues between those parties.

> *Judgment against Betty McClain Williams reversed.*
>
> *Judgment entered in favor of Betty McClain Williams for costs.*
>
> *Judgment against Food Fair Stores, Inc. reversed.*
>
> *Case remanded for a new trial as to Food Fair Stores, Inc.*
>
> *Appellees to pay costs.*