584 A.2d 722

**S & R, INC., t/a VOB Auto Sales**

v.

**Allison NAILS, et al.**

**No. 323, Sept. Term, 1990.**

Court of Special Appeals of Maryland.

Jan. 22, 1991.

Harry C. Storm (Abrams, West & Storm, P.C., on the brief), Bethesda, for appellant.

Kevin G. Hessler (Harvey B. Steinberg and Miller & Steinberg, on the brief), Rockville, for appellees.

Argued before GARRITY, ROBERT M. BELL and JAMES S. GETTY (retired), Specially Assigned, JJ.

ROBERT M. BELL, Judge.

Following a trial in the Circuit Court for Montgomery County, a jury returned special verdicts in favor of Allison Nails ("Nails") and Robert Bolton ("Bolton"), appellees, and against S & R, Inc. t/a VOB Auto Sales, appellant, as to appellees' claims for breach of contract and fraud.[1] The jury awarded each appellee compensatory and punitive damages. Appellant's motion for judgment notwithstanding the verdict and/or new trial, directed at the fraud and punitive damage verdicts, was denied in all respects except as to the punitive damage award to Bolton, which was granted. The court entered judgment in accordance with that ruling. Appellant's appeal from that judgment presents three issues:

1. Did the trial court err in submitting the fraud claims to the jury when plaintiffs' own testimony conclusively established the absence of any reliance, and when the evidence was insufficient to support other essential elements of the fraud claims?

2. Did the trial court err in submitting the issue of punitive damages to the jury when there was no evidence of any conduct over and above the alleged fraud itself to support a finding of malice?

3. Did the trial court err in submitting a further special interrogatory to the jury after the jury returned its verdict, and in denying defendant's motion for new trial when the answer to the further special question created an irreconcilable verdict?

Being aggrieved by the grant of appellant's motion for judgment notwithstanding the verdict as to his punitive damage award, Bolton has cross-appealed, presenting a single issue:

---

1. The gravamen of their claim was that, when they contracted with appellant, they were neither fully informed—indeed, they maintain that they were intentionally misinformed—as to the computation of their compensation, nor adequately compensated pursuant to that contract.

Did the trial court erroneously invade the province of the jury in granting a judgment notwithstanding the verdict as to the punitive damages awarded to cross-appellant, Bolton, when there was sufficient evidence from which the jury could find that the fraud perpetrated upon him at the time of his hire induced him to enter into his employment contract?

We answer appellant's third question in the affirmative and, hence, we will reverse. For the guidance of the trial court on remand, we will briefly address the other issues raised by appellant. We need not, and, therefore, do not, address Bolton's cross-appeal.

## THE FINALITY OF THE JURY VERDICT

After instructing the jury, the court provided it with a special verdict form for each plaintiff, Nails and Bolton, to assist it in recording the verdicts. Included on that form were questions pertaining to the fraud count and the breach of contract count as well as compensatory and punitive damages. As relates to punitive damages, each contained the following:

PUNITIVE DAMAGES

10. Did the fraud arise out of a contractual relationship?

YES ___

NO ___

11. If YES, do you find that defendant acted with actual malice?

YES ___

NO ___

12. Do you find that defendant acted with implied malice?

YES ___

NO ___

13. State the amount of punitive damages, if any, you determine appropriate.

$___

Before the jury began its deliberations, appellee asked the court to include in the verdict form the question, whether the fraud induced the contract; a question asking whether the fraud arose out of the contract was already included.[2] The court denied the request, ruling "It doesn't, to me, make a bit of difference. If they come up with an award of punitive damages and answer no implied malice and no actual malice, you're not going to get punitive damages, even if they award them." [3] Utilizing the verdict forms, the

---

**2.** The significance of these questions is readily apparent when one reviews the pay plan in effect when appellees were hired. The pay plan, which was called "Much More", utilized a "team concept". Pursuant to it, an assistant service manager (ASM) received, as compensation, a percentage of the sales—both parts and labor—he or she generated. As explained by appellant, the percentage was calculated after subtracting 15 percent of the total sales. The ASM then received five percent of that adjusted figure.

The appellees presented testimony tending to prove that they were not told about the 15 percent adjustment; rather, they were told merely that they were to be paid five percent of parts and labor. They both testified that they learned of the 15 percent adjustment at a meeting in January, 1987 when the then general manager, responding to a question, explained how the commissions were calculated.

Appellee Nails was initially hired in 1983 and left in April, 1984. She was subsequently rehired in 1984. She testified that, when she was rehired, she was told, as she had been when she was first hired, that she would be compensated at the rate of five percent of parts and labor. She acknowledged that she was given an estimate of what she could expect to make under the plan and that she made at least that much. She denied being told of the 15 percent adjustment, however.

Appellee Bolton was hired on August 21, 1984 as an ASM floater, at a flat salary. He stated that, at that time, he was told that his compensation plan would be changed to a commission system sometime in the future. That occurred in February, 1985, when he was assigned a service team. At that time, in addition to being told what he could expect to make under the commission plan, he testified that he was told that his commission was calculated on the basis of five percent of parts and labor; he was not advised of the 15 percent adjustment.

Appellees presented testimony corroborating their testimony that they were not told of the 15 percent adjustment. They also presented evidence which, if believed, would support a finding that the omission was intentional.

**3.** The court's reasoning is reflected in the following colloquy:

jury returned, as we have seen, verdicts in favor of both appellees. It found that appellant both defrauded appellees and breached its contract with them, for which it assessed compensatory damages. With regard to punitive damages, the jury determined that the fraud arose out of the contractual relationship and that appellant acted with implied, rather than actual, malice. Nevertheless, it assessed punitive damages against appellant, and in favor of both appellees. The court having read into the record, the jury's responses to the questions in the special verdict forms, the following then occurred:

[THE COURT:] Ladies and gentlemen, your verdict as it will be recorded, is that the verdict of all 12 of you ladies and gentlemen?

THE JURY: (A chorus of ayes)

THE COURT: Madame Clerk, will you please file the verdict sheets.

Counsel and the parties, I will excuse you.

MR. STEINBERG [Plaintiffs' counsel]: May we approach the bench?

THE COURT: Yes.

MR. HESSLER [Appellees' counsel]: Well, the question would be: do you find that the plaintiffs were fraudulently induced to enter into the contract?
THE COURT: Did the fraud arise out of a contractual relationship? Yes or no.
MR. HESSLER: How about: do you find that the fraud induced the plaintiffs to enter into the contract?
THE COURT: It has to. You started back here. "Do you find fraud?"
MR. HESSLER: And do you find that it induced them to enter into the contract.
THE COURT: If they find fraud, it has to be an inducement to enter into the contract. So when you get to the "did it arise out of the contract," you have to find actual malice.
If they find fraud and it is outside of the contract, that's your case. Why confuse them with this inducement to enter into the contract? They have already found that by answering yes to the other—

At the bench conference,[4] appellees brought to the court's attention what they considered to be an inconsistency in the verdict: despite finding that the fraud arose out of the contract and that appellant did not act with actual malice, the jury awarded punitive damages. They proposed to correct the inconsistency by submitting "an additional, supplement verdict sheet", asking the single question: "Do you find that the fraud induced the Plaintiff to enter into the contract?" After extended discussion, and over appellant's objection, the proposed additional issue was submitted to the jury, which, after further deliberations, found that fraud induced each contract.

Appellant filed a motion for judgment notwithstanding the verdict and for a new trial. Among the bases for the new trial request was the alleged impropriety of submitting an additional issue to the jury after the jury's verdicts had been announced, the jury had been polled, the clerk had been ordered to file the verdict sheets, and counsel and the parties had been excused. In addition, appellant alleged that the submission of the additional issue to the jury exacerbated the situation; the jury's response made the existing ambiguity or inconsistency even more irreconcilable, requiring a new trial.

Maryland Rule 2–522 provides in pertinent part:

\* \* \* \* \* \*

(b) *Verdict.*—Verdict of a jury shall be unanimous unless the parties stipulate at any time that a verdict or a finding of a stated majority of the jurors shall be taken as the verdict or finding of the jury. The verdict shall be returned in open court. Upon the request of a party or upon the court's own initiative, the jury shall be polled before it is discharged. If the poll discloses that the

---

4. While counsel were at the bench, the record does not reflect where the jury was. We may assume, however, that it had not dispersed, since, at the conclusion of the bench conference, the court was able to submit the additional question and send the jury back to the jury room for further deliberations.

required number of jurors have not concurred in the verdict, the court may direct the jury to retire for further deliberation or may discharge the jury.

(c) *Special Verdict.*—The court may require a jury to return a special verdict in the form of written findings upon specific issues. For that purpose, the court may use any method of submitting the issues and requiring written findings as it deems appropriate, including the submission of written questions susceptible of brief answers or of written forms of the several special findings that might properly be made under the pleadings and evidence. The court shall instruct the jury as may be necessary to enable it to make its findings upon each issue. If the court fails to submit any issue raised by the pleadings or by the evidence, all parties waive their right to a trial by jury of the issues omitted unless before the jury retires a party demands its submission to the jury. As to an issue omitted without such demand, the court may make a finding or, if it fails to do so, the finding shall be deemed to have been made in accordance with the judgment entered.

No party may assign as error the submission of issues to the jury, the instructions of the court, or the refusal of the court to submit a requested issue unless the party objects on the record before the jury retires to consider its verdict, stating distinctly the matter in which the party objects and the grounds of the objection. Upon request of any party, the court shall receive objections out of the hearing of the jury.[5]

---

5. Responding to appellant's argument that the verdict was complete, and, therefore, that there was nothing further for the jury to do when the bench conference was requested and the additional issue was submitted to the jury, appellees cite Rule 2–601. They maintain that it supports their position that the jury verdict had not been recorded and, consequently, was not complete. They also cite *Rohrbeck v. Rohrbeck*, 318 Md. 28, 566 A.2d 767 (1989). That Rule, captioned "Entry of Judgment", does not, however, address the issue with which we are here concerned. It relates only to the finality, and, hence, appealability, of a judgment, not to the manner of accepting a jury's

This Rule is relevant to, and instructive on, the issue with which we are presented. It is not, however, by any means, dispositive. As pertinent to our inquiry, the Rule permits the court to require the jury to return a special verdict, in a form to be determined, and on instructions given by the court. The Rule also requires the verdict to be unanimous, unless otherwise stipulated by the parties, and returned in open court. Should the court or a party desire, the jury must be polled. If the poll discloses any irregularity in the requisite number of jurors concurring, "the court may direct the jury to retire for further deliberation or may discharge the jury."

The issue facing us is, at what point is the jury's function concluded? Is it after it has announced a verdict and been polled, though not discharged? Is it after it has announced the verdict and been polled and discharged? As we have seen, the applicable Maryland Rule does not provide the answer to that question, nor, for that matter, does the case law. Several of the cases do, however, provide us with clues as to how the matter should be resolved.

In *Ager v. Baltimore Transit Company*, 213 Md. 414, 132 A.2d 469 (1957), after deliberating for some time, the jury informed the trial court that it was unable to reach a verdict, to which the court responded, "Well, then, it is incumbent upon me, and I do discharge you from further consideration of the case." *Id.*, 213 Md. at 418, 132 A.2d 469. Before the jurors left the jury box, however, the court was told by the clerk that the jury had changed its mind. Consequently, it directed the jury to return to the jury room and deliberate further. A verdict in favor of the defendants was subsequently returned. Rejecting the appellant's contention that, "as soon as the trial court made the above statement, the jury was rendered *functus officio* and was

---

verdict. A jury's verdict and a judgment are not synonymous, as Rule 2–601(a) makes clear: the clerk enters the judgment based upon a general verdict of a jury, "unless the court orders otherwise".

without further power or capacity to consider the case", the Court of Appeals stated:

> This Court at an early date, 1827, held that a verdict may be varied from by the jury, at any time before the verdict is recorded. *Edelan v. Thompson*, 2 Harris & G[ill], 31, 34. Cf. [ (1827) ] *Bronstein v. Amer. Ice Co.*, 119 Md. 132, 138, 86 A. 131 [ (1912) ]. But, ordinarily a jury should not be permitted to amend its verdict after it has been recorded and the jury dismissed. *Harris v. Hipsley*, 122 Md. 418, 89 A. 852 [ (1914) ]; *Gaither v. Wilmer*, 71 Md. 361, 18 A. 590 [ (1889) ]; *Williams v. New York, etc.*, 153 Md. 102, 107, 137 A. 506 [ (1927) ]. Of course, in this case there was no verdict at the time the jury was directed to resume deliberation, and the proposed discharge of the jury was never recorded. It was held in the case of *Koontz v. Hammond*, 62 Pa. 177 [ (1869) ] that, although the jury had been ordered discharged, they could still render a verdict if they had not separated or left the court room and their discharge had not been recorded. We think this was a proper ruling. It would seem a vain and futile holding to require the parties to undergo another lengthy trial, with its consequent expense and consumption of time, under the circumstances stated above. Cf. 66 A.L.R 542. We find no error in the trial Court's decision to have the jury consider the case further.

213 Md. at 419, 132 A.2d 469.

A similar result was reached in *Traylor v. Grafton*, 273 Md. 649, 332 A.2d 651 (1975). In that case, after the jury had announced its verdict and, while being polled, it was discovered by the court that the jury's verdict was incomplete, the jury having failed to announce a verdict on one of the submitted counts. The court also discovered during this process, that the jury was confused concerning a third party claim. It therefore submitted to the jury for further deliberation three additional questions which it had pre-

pared to help the jury render a complete verdict.[6]  The jury answered them in accordance with the court's instructions. *Id.*, 273 Md. at 656–58, 332 A.2d 651.

On appeal, the appellant argued, *inter alia*, "that it was error to submit issues to the jury after its verdict was announced and after a request that the jury be polled." 273 Md. at 659, 332 A.2d 651.  The Court of Appeals affirmed. Citing *Ager* for the proposition that "[a] jury may correct or change its verdict at any time before the verdict is recorded," the Court pointed out that the verdict, as orally announced by the jury, was incomplete since it made no finding on one count.  Furthermore, it noted that the verdict was never recorded.  273 Md. at 680, 332 A.2d 651. The Court cited *Rosenberg v. Manager, U.C. & J.F. Board*, 260 Md. 164, 271 A.2d 692 (1970) in which it had earlier commented upon three ways of submitting special issues to a jury, one of which was to submit "a separate issue for determination after the verdict in the original case, but before the jury is discharged...." 273 Md. at 681, 332 A.2d 651, quoting 260 Md. at 170, 271 A.2d 692.  It concluded:

> Judge Proctor, obviously sensing the confusion of the jury and the incompleteness of the verdict announced by the foreman, was of the opinion that the factual answers to the succinct issues he prepared would help free the jury from the morass in which it was mired and the issues can be categorized as "separate issue[s] for determination after the verdict in the original case."

*Id.*

In neither *Ager* nor *Traylor* had a final or complete verdict been rendered before the submission of the additional issue: in *Ager*, the jury had not arrived at any verdict,

---

**6.** The court had prepared the questions prior to the jury's attempt to render a verdict, presumably because, based on questions asked during deliberations, the court sensed the jury's growing confusion.  The questions were not submitted to the jury before the aborted verdict rendition, the jury having advised the court that it had reached a decision prior to their being typed.

while in *Traylor*, it was simply incomplete. The rule enunciated and the result reached in both cases, therefore, were fully appropriate. They do not, however, directly address the issue in this case: at what point is the jury's verdict final? The recent case of *Hoffert v. State*, 319 Md. 377, 572 A.2d 536 (1990), *albeit* a criminal case, is quite informative.

In *Hoffert*, four charges, including use of a handgun in the commission of a crime of violence, were sent to the jury for decision and, to assist in its deliberations, a verdict sheet listing those charges was given it. The court, during its instructions, admonished the jury that it should not return an inconsistent verdict, *i.e.*, that, should the jury find the defendant not guilty as to the first three charges [7], it should likewise return a verdict of not guilty on the handgun charge. Upon inquisition by the clerk, the jury announced verdicts of not guilty as to each of the three substantive charges. No inquiry was made as to the fourth charge. When, at the request of the prosecutor, the jury was then polled and the verdicts were determined to be unanimous. The clerk hearkened the jury as to the first count, after which the judge addressed the jury as follows:

> Members of the jury, having received your verdicts here today your service in this case is now complete. I must tell you, however, that—

At that point, the court was informed by a juror that a verdict had not been taken on the fourth charge, the handgun count. That verdict was taken; it was "guilty". Following consultation between the court and counsel, the verdict was accepted. Subsequently, the jury was polled as to that verdict and, all of the verdicts were hearkened and, then, the jury was dismissed. 319 Md. at 380–82, 572 A.2d 536.

---

**7.** Those charges were attempted murder in the first degree, attempted murder in the second degree, and robbery with a deadly weapon, all of which are crimes of violence. *See* Maryland Code Ann. Art. 27, § 441(e).

Addressing the propriety of the lower court's acceptance of the guilty verdict, the Court of Appeals recognized that, notwithstanding proper instructions, as were given in that case, inconsistent jury verdicts are permissible. 319 Md. at 383–85, 572 A.2d 536. It concluded, however, that, when the jury announced the not guilty verdicts and were polled, the trial was over, just as the trial judge initially thought. It explained:

> When the jury was polled on the verdicts of not guilty on the first three charges, *see* Md. Rule 4–327(e), and the poll disclosed that the verdicts were unanimous, the verdicts were final. *Smith v. State*, 299 Md. 158, 164–170, 472 A.2d 988 (1984); *Pugh v. State*, 271 Md. 701, 705, 319 A.2d 542 (1974). The verdicts were legally proper. They were not contrary to the law and, without more, were in full accord with the judge's instructions which properly reflected the law. Nor were they "ambiguous, inconsistent, unresponsive, or otherwise defective." *See Smith* [299 Md.] at 170, 472 A.2d 988. The verdicts stood complete without a verdict on the handgun charge. The guilt stage of the trial was over at that point. The jury had no further function to perform. It had exhausted its power and authority and could not be called upon to exercise additional duties in the case. In short, the case was no longer within the province of the jury. In the circumstances, the State was not entitled to a verdict on the handgun charge. It follows the judge erred in permitting the jury to return a verdict on the fourth count. It was not a matter of the exercise of judicial discretion. The judge had no discretion to exercise because the verdict on the fourth charge was null and void and of no effect whatsoever. It certainly could not serve as a basis for the imposition of punishment and the entry of a judgment. (Footnote omitted)

319 Md. at 386–87, 572 A.2d 536. In a footnote, the Court recognized that:

> When the verdicts of the jury are not complete, the jury is still under the aegis of the court, the jury may resume

its deliberations to resolve the verdicts required to be rendered. For example, if the charges are arson and burglary and the jury returns a verdict only on the arson offense, it may be called upon to return a verdict on the burglary offense. Such circumstances are readily distinguishable from the circumstances here.

319 Md. at 387 n. 3, 572 A.2d 536. The Court reversed the judgment on the handgun charge.

In the case *sub judice*, as in *Hoffert*, the jury was correctly instructed concerning the law to be applied to the facts found. Appellant complains, to be sure, about the propriety of the fraud and punitive damage verdicts and awards, but it does so only on the basis that those issues ought never to have been submitted to the jury. It does not contend, on this appeal, that the instructions given on those issues were erroneous. The cases are also similar in that the jury rendered its verdict and was polled prior to any problem being brought to the court's attention.

Rule 4–327, the applicable rule in *Hoffert* (and to criminal trials), in pertinent part, provides:

(a) *Return.*—The verdict of a jury shall be unanimous and shall be returned in open court.

> \*    \*    \*    \*    \*    \*

(e) *Poll of Jury.*—On request of a party or on the court's own initiative, the jury shall be polled after it has returned a verdict and before it is discharged. If the jurors do not unanimously concur in the verdict, the court may direct the jury to retire for further deliberation, or may discharge the jury if satisfied that a unanimous verdict cannot be reached.

As is readily apparent, the operative provisions of this Rule and those of Rule 2–522(b), *supra*, are almost identical. This is important because it signals that the test of finality of verdicts in criminal and civil cases is the same.

As we have seen, unlike this case, the verdict was hearkened in *Hoffert*. It is settled that "polling is a fully

commensurable substitute for hearkening," [8] *Ross v. State,* 24 Md.App. 246, 254, 330 A.2d 507 (1975), *rev'd on other grounds,* 276 Md. 664, 350 A.2d 680 (1976), and that the finality of a verdict is "conclusively certified by the poll of the jury," 24 Md.App. at 255, 330 A.2d 680, principles fully recognized in *Hoffert,* 319 Md. at 386, 572 A.2d 536. Indeed, the case the *Hoffert* Court cited for that proposition, *Smith v. State,* 299 Md. 158, 472 A.2d 988 (1984), on the pages specifically identified, extensively treats the subject. *See* 299 Md. at 164–170, 472 A.2d 988. *See also Pugh v. State,* 271 Md. 701, 705, 319 A.2d 542 (1974).

That, in *Hoffert,* it was the jury that was excused by the court, while, in the instant case, the court simply indicated an intention to excuse the parties and the lawyers is not, we believe, significant; we perceive no practical difference between the two situations—excusing the parties and counsel, signals the end of the jury function just as surely as does excusing the jury. We turn now to a consideration of the effect of an inconsistency existing on the face of the verdict form prior to the jury being polled. In this case, while present and, presumably, apparent on the face of the form, the inconsistency was brought to the court's attention only after the jury had been polled. On the other hand, the inconsistency in *Hoffert* was not apparent, and did not become apparent, until after the poll and the verdict as to one of the charges had been hearkened.

██ Notwithstanding the dissimilarities, we think that the circumstances surrounding the taking of the verdict in this case are sufficiently close to those existing in *Hoffert* to warrant the identical result. As we have seen, the operative provisions of the rules applicable to criminal and civil jury trials are substantially identical. That an inconsistency in a verdict exists prior to the rendition of the

---

8.  "The formalizing ceremony of 'hearkening' is an alert to the jury to secure certainty and accuracy enabling them to correct any manifest mistake." *Ross,* 24 Md.App. at 254, 330 A.2d 507, citing *Glickman v. State,* 190 Md. 516, 525, 60 A.2d 216 (1948).

verdict and should have been apparent prior to a poll of the jury is not a sufficient basis for differentiating between the finality of the verdicts, where in both cases, the verdicts were "conclusively certified by the poll of the jury." We hold, therefore, that where a jury, which had been properly instructed, returns an apparent verdict, which is taken, the jury is polled, and the parties and counsel are excused, that verdict is final, there being nothing further for the jury to do; at that point, submitting additional issues or requiring further deliberation is no longer an option open to the court.

In addition to citing *Traylor, Rosenberg,* and *Rohrbeck v. Rohrbeck,* 318 Md. 28, 566 A.2d 767 (1989), *see* note 3, *supra,* in support of the position that further deliberations were permitted,[9] appellees seek to distinguish *Hoffert* on its facts. First, they point out that, in *Hoffert,* unlike here, the verdict on the fourth charge was directly contrary to the judge's instructions. The transcript in this case reflects otherwise. Here, the court instructed the jury that it could return a punitive damage award on a finding that the fraud arose out of the contract only if it also determined that appellant acted with actual malice. Despite that instruction, to which neither party excepted and a finding that the fraud arose out of the contract, the jury awarded punitive damages based on implied malice. The situation, in other words, is no different here than it was in *Hoffert.*

Appellees next seek to distinguish *Hoffert* on the basis that there, after the verdict was taken, the judge asked for and received assurance from both the prosecution and the defense that "they had nothing 'else on the verdict while the jury [was] intact . . .' " and only then dismissed the jury. That attempt at distinction is unavailing as well. The actions to which appellees refer occurred after the jury had announced its verdict on the fourth charge.

---

**9.** The *Rosenberg* Court's enumeration of options was, at best, dicta; the posture of the case makes clear that the issue was not there presented.

Appellees' final attempt to distinguish *Hoffert,* proceeds on the assumption that the verdicts in the case *sub judice* "were arguably not complete until the question regarding fraudulent inducement was presented and answered," unlike the situation in *Hoffert* where the Court indicated that "[t]he verdicts stood complete without a verdict on the handgun charge." 319 Md. at 386, 572 A.2d 536. Support for this position is found in footnote 3 in *Hoffert,* which does indicate that, as long as the jury is under the aegis of the court it may resume deliberations and resolve the verdicts required to be rendered. Appellees do not complete the thought expressed there, however. The Court gave an example, thus, making clear that it is referring to the situation in which the jury renders an *incomplete* verdict that requires it to deliberate further to render that verdict complete. This argument does not, therefore, advance appellees' cause.

In *Smith,* after discussing the finality of a verdict, as to which the jury had been hearkened and polled, the Court said: "Of course, neither hearkening nor polling cures a verdict that is defective when it is hearkened or polled in its defective form." 299 Md. at 169, 472 A.2d 988. It reiterated what it had previously said in *Heinze v. State,* 184 Md. 613, 617, 42 A.2d 128 (1945) and *Glickman v. State,* 190 Md. 516, 525, 60 A.2d 216 (1948):

Where a verdict is ambiguous, inconsistent, unresponsive, or otherwise defective, it is the duty of the trial judge to call the jury's attention to the defect and to direct them to put the verdict in proper form either in the presence of the court or by returning to their consultation room for the purpose of further deliberation.

299 Md. at 170, 472 A.2d 988. The cases cited by the Court in support of the proposition provide us with insight as to the proposition's limits.

Both *Williams v. State,* 60 Md. 402 (1883) and *Ford v. State,* 12 Md. 514 (1859) involved ambiguities in the jury's verdict. In both, according to the foreman, the jury found the defendant guilty of first degree murder. In the poll

that followed, however, the individual jurors neglected to specify that their verdict related to first degree murder. The court determined that no proper verdict had been rendered and, accordingly, a new trial was required, notwithstanding the verdict—"guilty" of first degree murder—had been hearkened. In *Heinze,* the two charges lodged against the defendant were inconsistent. When queried by the clerk, the foreman announced a general verdict of guilty. In response, the clerk phrased the question so as to achieve consistency, to indicate a finding of guilty on the first count, and not guilty on the second count, to which the foreman answered yes. In the poll that followed, the individual jurors indicated that they agreed with the verdict as phrased by the clerk and adopted by the foreman, *i.e.,* that the defendant was guilty of the first count but not guilty of the second count. The Court recognized the general rule, but, under the circumstances, stated:

> It is obvious that the foreman, in announcing the general verdict of guilty, merely made a mistake in omitting to find the defendants not guilty on the second count. It is undoubtedly true that a modification of the jury's verdict should not be made in open court without the consent of all the jurors after a clear understanding of the change and its effect. But there is nothing in this case to indicate that the jurors did not understand the simple correction of the verdict.

184 Md. at 620, 42 A.2d 128. It concluded that the defendants were not prejudiced by the manner in which the verdict was received.

In *Glickman,* the jury returned a verdict on one of the two counts submitted to it. The defendant objected to the court's ordering the jury to deliberate further on the count on which no verdict was returned and ultimately appealed on that basis. The Court rejected the defendant's argument, determining instead, that when two indictments are tried together and a decision is rendered on only one of them, "[c]ertainly then, when the jury have arrived at no verdict and so state, it is equally the duty of the trial judge

to require them to retire, deliberate upon the case, and arrive at a verdict if possible." 190 Md. at 525, 60 A.2d 216.

*Smith* is similar to *Glickman* in that, after all is said and done, in neither case had the jury arrived at a unanimous verdict on any of the charges upon which it had deliberated. Consequently, in *Smith*, the jury was quite properly instructed to continue deliberations. *See* 299 Md. 170–177, 472 A.2d 988.

■ As we have seen, the jury in the case *sub judice* awarded punitive damages on a finding that implied malice was sufficient to support such damages where the fraud arose out of the contract. The instructions were to the contrary.

Viewed in light of the instructions, therefore, the punitive damages verdict is, at best, ambiguous, and, more likely, inconsistent. We will explain.

The court instructed the jury as follows:

Punitive damages awarded in a fraud case is a very difficult concept. If the fraud arises out of a contractual relationship between the parties—that is, if there is a contractual relationship existing between the plaintiffs and the defendants—and thereafter, the defendant willfully and deliberately defrauds the person, then, in order to award punitive damages, you ladies and gentlemen of the jury must find that the fraud was done with actual malice; that is, out of hate or ill-will or rancor, as opposed to merely greed or to benefit defendant's own desires.

If the fraud is in the inducement to the contract—that is, there wasn't originally a contractual relationship, but in order to induce an individual to perform an act or enter into a contract; they make deliberate misrepresentations or fraud knowing that they do not intend to fulfill those, and that the plaintiffs relied upon them and they were justified in relying upon them and the conduct that, in itself, the mere fraud, doesn't give rise or allow for punitive or exemplary damages.

But if there is an additional element of implied malice, that is, that it is outrageous or wanton conduct with a willful disregard for the rights of an individual and done in such a manner that that person should be punished and should be an example to other people that it would not be tolerated and they cannot do that in the future.

When, despite the court's instructions and its own findings of implied malice, the jury awarded punitive damages, having found that the fraud arose out of the contract, a conflict existed on the face of the verdict sheet. The absence of the fraud in the inducement question from the verdict sheet added an element of ambiguity.

Appellees maintain that this ambiguity and/or inconsistency, notwithstanding the polling of the jury, was sufficient to permit the court to step in and require the jury to deliberate further. This is so, they maintain, because, until the jury was called upon to answer the question concerning inducement of the contract, the verdicts were incomplete, citing *Traylor, supra*.[10]

Appellant responds that, assuming *arguendo* that the court had the authority to order the jury to deliberate further, the submission of the one additional question to the jury and its response did not cure the inconsistency or ambiguity; rather, in its view, it exacerbated the situation. It reasons:

Under the jury's findings that the fraud arose out of a contract and that there was no actual malice, a judgment for the defendant was mandated. Under the answer to the supplemental question, that the fraud induced the contract, coupled with the finding of implied malice, a

---

**10.** Appellees also maintain that in any event, the court would have been required to mold or reform the verdict to reflect what the jury manifestly intended, *i.e.*, to award punitive damages to them. They rely on *Montgomery Ward & Company, Inc. v. Keulemans,* 275 Md. 441, 446, 340 A.2d 705 (1975); *Sun Cab Company v. Walston,* 15 Md.App. 113, 161–62, 289 A.2d 804 (1972) *aff'd,* 267 Md. 559, 298 A.2d 391 (1973). The short answer to this contention is that the court did not purport to mold the verdict to reflect the jury's manifest intention.

judgment for each plaintiff was required. The two answers cannot be harmonized, are hopelessly inconsistent, and the trial judge erred in not granting a new trial based on the inconsistency.

■ It is well settled that irreconcilably defective verdicts cannot stand. *Gaither v. Wilmer,* 71 Md. 361, 364, 18 A. 590 (1889). Where the answer to one of the questions in a special verdict form would require a verdict in favor of the plaintiff and an answer to another would require a verdict in favor of the defendant, the verdict is irreconcilably defective. *Ladnier v. Murray,* 769 F.2d 195, 198 (4th Cir.1985); *Carter v. Rogers,* 805 F.2d 1153, 1158–59 (4th Cir.1986); *Robertson Oil Co., Inc. v. Phillips Petroleum Company,* 871 F.2d 1368, 1373 (8th Cir.1989); *Hopkins v. Coen,* 431 F.2d 1055, 1059 (6th Cir.1970); *Lewis v. Yaggi,* 584 S.W.2d 487, 497–98, *reh'g denied* (Tx.Civ.App.1979) (same); *Russell v. Pryor,* 264 Ark. 45, 568 S.W.2d 918, 922–23 (1978).[11]

---

**11.** *Food Fair Stores, Inc. v. Lascola,* 31 Md.App. 153, 167, 355 A.2d 757 (1976), upon which appellees rely for the proposition that an "inconsistency between one verdict and another returned by the same jury does not automatically make either verdict illegal," is inapposite to the situation *sub judice.* The statement for which it is cited was made in the context of an analysis pursuant to Md. Rule 560, the predecessor of Md. Rule 2–522(c). When that case was decided, the Rule provided, as does the present Rule, that a party waives the right to jury trial of an issue raised by the pleadings or by the evidence at trial if the issue is not submitted to the jury, or if timely demand that it be submitted is not made prior to the jury's retiring. It was with reference to that provision that the court determined that there was no inconsistency in that case and, hence, no cause for reversal. 31 Md.App. at 167, 355 A.2d 757.

The criminal cases, *e.g. Ford v. State,* 274 Md. 546, 337 A.2d 81 (1975); *Mack v. State,* 300 Md. 583, 479 A.2d 1344 (1984); *Wright v. State,* 307 Md. 552, 576, 515 A.2d 1157 (1986), indicating that inconsistent jury verdicts "are normally tolerated ...," are likewise inapposite. This is true because of "the singular role of the jury in the criminal justice system", *Hoffert,* 319 Md. at 384, 572 A.2d 536, and "a reluctance to interfere with the results of unknown jury interplay, at least without proof of 'actual irregularity.'" *Shell v. State,* 307 Md. 46, 54, 512 A.2d 358 (1986), quoting *Ford,* 274 Md. at 553, 337 A.2d 81. In the words of the Court of Appeals:

The punitive damages issue was submitted to the jury for decision. Indeed, the court defined fraud in the inducement and the nature of the malice necessary to sustain a punitive damages award based on such a finding. It also defined fraud arising out of a contract and the nature of the malice necessary to sustain punitive damages on that account. That the verdict sheet contained a question concerning whether the fraud arose out of the contract, but not one pertaining to fraud in the inducement, does not mean that only the former issue was to be resolved by the jury; on the contrary, the instructions make clear that the fraud in the inducement issue was to be decided. Thus, it is logical to assume that, had the jury found that the fraud did not arise out of the contract and that appellant acted with implied malice, submission of a fraud in the inducement interrogatory to the jury would have confirmed the jury's actions. When, however, the jury answered that the fraud arose out of the contract and that there was no actual malice, it cannot be inferred that it intended the opposite of what it found, *i.e.* that the fraud induced the contract. It simply does not follow that the jury's answer to a subsequently submitted fraud in the inducement interrogatory means that its earlier answers were incorrect. In point of fact, it is pure speculation as to what the jury meant. If the answers originally given be accepted, then punitive damages should not have been awarded; if the answer to the subsequent interrogatory be accepted then its answer to question 10 on the verdict form is surplusage. In short, the

---

The general view is that inconsistencies may be the product of lenity, mistake, or a compromise to reach unanimity, and that continual correction of such matters would undermine the historic role of the jury as the arbiter of questions put to it.

*Shell,* 307 Md. at 54, 512 A.2d 358.

We held, for the first time, in *Eagle–Picher v. Balbos,* 84 Md.App. 10, 34–31, 578 A.2d 228 (1990), that inconsistent jury verdicts are also tolerated in civil cases. That holding was based on the criminal cases reaching the same result. Therefore, *Eagle–Picher* does not present an inconsistent precedent either.

verdicts, as amended, are irreconcilable; accordingly a new trial should have been granted on that basis.[12]

## REMAINING ISSUES: PUNITIVE DAMAGES; FRAUD

■ The remaining issues raised by appellant need not detain us long. We perceive no error in the court's submission of the punitive damages issue to the jury. As we see it, the totality of the circumstances was such as to provide an adequate basis upon which a jury could find malice. Furthermore, notwithstanding its arguments to the contrary, we are satisfied that the essential elements of fraud were sufficiently proven to have required submission of the issue to the jury. We think it important, however, to address the reliance element separately.

Appellant cross-examined both appellees on the question of their reliance on the representation that they would receive, as compensation, five percent of the gross dollar amount of the parts and services generated by his or her team. As relevant to this point, the cross-examination of appellee Nails revealed:

Q. Ms. Nails, it is a fair statement, is it not, that even if you had been specifically told about the 15 percent, that you would have taken the job anyway—

A. I can't—

Q. —assuming all—

A. —answer that now. I don't know. I don't honestly know right now if I would have taken it or not.

Q. Okay.

---

**12.** It is arguable that the inconsistency and/or ambiguity in this case is not the kind to which the Court referred in *Smith*. The jury's findings of fact regarding the source of the fraud and its nature are not inherently inconsistent. But when the court asked the jury to draw a conclusion from the facts it found, it also asked it to determine whether punitive damages were an appropriate issue, determinable simply by reviewing the jury's findings of fact. It was that conclusion that caused the inconsistency. The thrust of the cases upon which *Smith* relies appears to be that it is the findings of fact, rather than the conclusion to be drawn from them, that is most critical. We need not address the issue at this time, however.

A.  That was a long time ago.

The same line of questioning as to appellee Bolton produced the following:

Q.  Now, Mr. Bolton, it is true, is it not, that if you had been told at the time of hire about the 15 percent, all other things being equal with the estimates that Mr. Guthrie gave you as to how much you could expect to make, you would have still taken the job, would you not? A.  I don't know.  I had no other job offers at the time, so I have nothing to compare it with.

Appellant argues:

Based on the plaintiffs' answers, the jury was required to hypothesize about an essential element of plaintiffs' claim, and find reliance in a case where the plaintiffs themselves couldn't say whether they relied or not. Plaintiffs' evidence on the reliance issue was insufficient to satisfy the standard applicable to "run of the mill" civil cases.  When judged by the appropriate *Capital–Gazette/Anderson* standard[13], it fell woefully short.  The trial court erred in submitting the fraud issues to the jury.  (Footnote omitted)

Appellant thus relies upon a "but for" test for determining the submissibility of the issue to the jury.

There is language in Maryland cases indicating that the "but for" test is applicable in fraud cases.  *See, e.g., Martens Chevrolet, Inc. v. Seney,* 292 Md. 328, 333, 439 A.2d

---

**13.**  *Capital–Gazette Newspapers, Inc. v. Stack,* 293 Md. 528, 445 A.2d 1038, *cert. denied,* 459 U.S. 989, 103 S.Ct. 344, 74 L.Ed.2d 384 (1982); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

Appellant cites *Capital–Gazette* for the proposition that the clear and convincing evidence test applies to fraud cases, 293 Md. at 540–41, 445 A.2d 1038, and *Anderson,* for the proposition that the standard applies when ruling on a motion for judgment.  477 U.S. at 252, 106 S.Ct. at 2512.  We have no dispute with either proposition and, indeed, in *Fuller v. Horvath,* 42 Md.App. 671, 685, 402 A.2d 134, *cert. denied,* 286 Md. 178 (1979), we held that "All that is necessary at the directed verdict stage, despite the high ultimate standard, is that there be some competent evidence 'however slight.'"  We think *Fuller* is dispositive of that issue.

534 (1982) ( "... (4) that such person not only relied upon the misrepresentation, but had a right to rely upon it in the full belief of its truth, and that he would not have done the thing from which the injury resulted had not such misrepresentation been made ..."); *James v. Goldberg*, 256 Md. 520, 528–29, 261 A.2d 753 (1970) (same); *Suburban Properties Management, Inc. v. Johnson*, 236 Md. 455, 460, 204 A.2d 326 (1964) (same); *First National Bank of Maryland v. Burton, Parsons & Co., Inc.*, 57 Md.App. 437, 454, 470 A.2d 822, *cert. denied*, 300 Md. 88, 475 A.2d 1200 (1984) (same). These cases do not, however, mandate, under circumstances herein existing, a different result; the court was not permitted, as a matter of law, on facts here presented, to rule on the reliance element.

In the case *sub judice*, appellees were asked, whether, all other things being equal, they had been told that they were really going to receive only five percent of 85 percent would they, nevertheless, have taken the job, to which they both responded with uncertainty. On the other hand, the evidence before the court, or the inferences to be drawn from it, was clear, appellants acted not only in light of the representation, but because of it; the amount they would make was important to each of them. The uncertainty expressed in response to a question calling upon the witness to speculate about what he or she would have done is not the equivalent of stating that he or she *did not rely* on the representation. We hold that the court did not err in submitting the issue to the jury.

Because of our disposition of the verdict issue, we remand the case to the circuit court for new trial, that issue being so intimately related to those as to which the jury appropriately entered a verdict. *See Food Fair Stores v. Lascola*, 31 Md.App. at 170, 355 A.2d 757; *Board v. RTKL Associates, Inc.*, 80 Md.App. 45, 60, 559 A.2d 805, *cert. granted*, 317 Md. 609, 565 A.2d 1033 (1989).

JUDGMENTS REVERSED; CASE REMANDED TO THE CIRCUIT COURT FOR MONTGOMERY COUNTY FOR NEW TRIAL.

COSTS TO BE PAID ONE–HALF BY APPELLANT
AND ONE–HALF BY APPELLEES.